BENJAMIN P. LISSNER, Respondent, *v.* HAYNES AUTO-
MOBILE COMPANY OF NEW YORK, Appellant.

(Supreme Court, Appellate Term, Second Department, December,
1918.)

Lease — construction of covenants by tenant to assume all liability and
damage which may arise from any accident which may occur in
front of premises — negligence.
Landlord and tenant — action by landlord against tenant to recover an
amount paid in settlement of a claim for personal injuries — coal-
hole in sidewalk — burden of proof — negligence.

A covenant by one of the tenants in a four story building
to assume all liability and damage which may arise from any
acc'dent which may occur in front of the premises must
be construed in the light of the situation of the parties when
the lease was made and the tenant can only be held liable for
accidents happening through its negligence or the negligence
of those for whose acts it would be liable.

A further covenant which expressly imposed upon said
tenant the obligation to replace window glass which had become
broken from any cause whatever, strengthens the contention
that defendant never intended by the other covenant to assume
liability for accidents in front of the premises due to the
negligence of others.

In an action by the landlord against said tenant to recover
$750, the amount paid in settlement before trial, of a claim for
$10,000, of a pedestrian for personal injuries sustained by
falling into a coal-hole on the sidewalk in front of the premises,
the plaintiff sustained the burden of showing that he was
justified in settling the action brought against him, but it
appeared that defendant had nothing whatever to do with
the coaling or heating of the building but that this was attended
to by the other tenant pursuant to an arrangement with the
landlord.   *Held,* that a judgment in favor of plaintiff will be
reversed and the complaint dismissed upon the merits with
costs.

APPEAL by the defendant from a judgment entered
in favor of the plaintiff for the sum of $1,058 damages

Appellate Term, Second Department, December, 1918.   [Vol. 105.

and $46.03 costs, in the Municipal Court of the city of New York, borough of Brooklyn, sixth district, on July 2, 1918.

Norman G. Hewitt, for appellant.

Julius Schwartz, for respondent.

Manning, J.   The plaintiff is the landlord of a four-story building located at the corner of Halsey and Bleecker streets, Newark, N. J., and sued the defendant as lessee of a part of these premises, under a written lease entered into between the parties on the 2d day of April, 1914, for the recovery of an amount paid by the plaintiff in settlement of a claim, and the expenses incident thereto, in an action brought by one Edna R. Clark, against him, for injuries alleged to have been received by her on the 25th day of November, 1914, by reason of her falling into a coal-hole situated on the sidewalk in front of a part of the premises. The clause in the lease on which the cause of action is based is as follows: "And the said party of the second part shall make all repairs to the interior of the premises he occupies, the said party of the second part shall assume all liability and damages which may arise from any accident which may occur in front of his premises."

The building in question was erected by the plaintiff in 1911. The first or ground floor was divided by a partition, running through the center of the building, thus making a store on the Halsey street side, which was occupied by another tenant, the firm of Mullin & Earl, and a store on the Bleecker street side, which was occupied by the defendant. On the Bleecker street side there was an entrance leading to the elevator, the wash-room and upstairs. The coal-

hole into which it is claimed the woman fell, was located in front of this entrance to the elevator, washroom and stairway. It appears that the firm of Mullin & Earl became tenants of the Halsey street floor, and the third and fourth floors of the building in question, prior to the tenancy of the defendant, and at the time that Mullin & Earl became such tenants, they agreed with the plaintiff that they would run the fires which heated the building, and the plaintiff was to furnish the coal. By the terms of the lease between the plaintiff and the defendant, the premises to be occupied by the defendant were as follows: "the entire fourth floor and corner store, also the rear of the building and the elevator to be used in common with the other tenants of the building."

The lease further provided that the plaintiff was to furnish and supply the elevator service and the power thereof, to the defendant, for which the defendant agreed to pay to the plaintiff its proportionate share of the cost of operating the same, and the defendant assumed all liability in connection with the elevator service, and released the plaintiff from all damages arising out of any accidents occurring as incidental to the running of the elevator. The plaintiff by the terms of the lease agreed to furnish heat and water without expense to the defendant, and it is shown by the record that the defendant had nothing to do with the cellar of the premises. It had nothing to do with the running of the fires in the building, and nothing to do with the removal of the ashes in the cellar. The ashes were removed by an employee of the other tenant, Mullin & Earl.

On November 25, 1914, at about eleven o'clock in the morning, one Edna R. Clark, residing at No. 49 Bleecker street, Newark N. J., while carrying several bundles, left Hahnes Department Store in Newark,

crossed Halsey street towards Bleecker street, and while walking in the direction of her home, along Bleecker street, proceeded as far as the coal-hole on Bleecker street in front of the building referred to. This coal-hole, as shown by the record, was the ordinary coal-hole, and was protected by an iron cover. In her deposition, she says that it covered the entire hole, as far as she could see; she stepped on the coal-hole cover and she went down into the coal-hole. She did not notice anything particular about the coal-hole cover; it struck her eyes as being like all other coal-holes seen throughout the city; she did not know whether it tipped or not, and at the time of the accident, she said there were fifteen or sixteen ash cans obstructing nearly all of the sidewalk, and it was necessary for her to walk across that part of the walk where the coal-hole was located.

The first contention advanced by the defendant is that the plaintiff failed to show facts constituting any liability for the injuries to Miss Clark. I am inclined to think that this contention is not sound, for while there is no express provision in the lease which reserves to the landlord the control of the sidewalk in front of the leased premises, it affirmatively appears that there was another tenant in the building, and the plaintiff's testimony is to the effect that he had an arrangement with this tenant, Mullin & Earl, by which the latter were to run the fires for the plaintiff's building, and it also appears that the plaintiff paid for the coal. It therefore sufficiently appears that the plaintiff had control of the sidewalk and the coal-hole, in order to enable Mullin & Earl to run the fires for the plaintiff's building, pursuant to his arrangement with them to that effect, and to permit the delivery of coal through the hole into the cellar for that purpose. Under this state of facts, the action brought by the

injured person was maintainable, and a recovery against the owner was legally possible. *Jennings* v. *Van Schaick,* 108 N. Y. 530; *Scott* v. *Curtis,* 195 id. 424.

I think the record here is susceptible of sufficient proof to justify a holding that the plaintiff has sustained the burden in this action of proving actionable facts upon which his liability depended, and this being so, he was justified in settling the action referred to, provided the settlement was reasonable. The testimony of the injured woman as to the manner in which the accident happened, in my opinion, was sufficient to invoke the doctrine of *res ipsa loquitur.* *Miners* v. *Ausfresser,* 101 Misc. Rep. 394. It appears that the action brought against the plaintiff by the injured woman was for $10,000 damages, and this action, after preliminary legal steps and much negotiation, was settled prior to its trial for the sum of $750. If the suggestion is made that the plaintiff had no right to settle the action in advance of a trial, this contention is also untenable, because, in an action of this character, the authorities are to the effect that the party indemnified is not compelled to await the adverse decision of an action brought against him, but he may pay or compromise the claim made against him without suit. In such case, however, he takes the risk in an action against his indemnitor, of establishing the facts upon which his liability depended, as well as the reasonableness of the amount paid in settlement thereof. *Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214; *Cornell* v. *Travelers' Ins. Co.,* Id. 239, 255.

The only remaining question in this case is whether or not the plaintiff can recover against the defendant on the theory that the latter is an indemnitor, and the solution of this problem depends entirely upon the construction to be given to the words of the covenant con-

tained in the lease.   The covenant is as follows : " Said party of the second part shall assume all liability and damages which may arise from any accident which may occur in front of his premises."

Does this clause impose a liability on the defendant for accidents occurring for any cause, and due to the negligence of anyone; or is it the intention to limit the liability to such damages as may be caused by the negligence of the defendant, its servants or employees? The contention of the landlord is that the clause is broad enough to cover liability in all cases and under all circumstances, while the contention of the tenant is that the clause only refers to liability for accidents happening through its negligence or the negligence of those for whose acts it would undoubtedly be liable.

If no limitation whatever be placed upon the broad language employed, it would seem to impose a liability on the defendant for accidents occurring in front of that portion of the plaintiff's property which is exclusively occupied by the other tenant, Mullin & Earl.   It can hardly be contended that such was the intention of the parties, and it seems plain, therefore, that the covenant must be construed in the light of the situation of the parties when they made it.   It will be recalled from the testimony of the defendant's employee or manager, that the defendant had nothing whatever to do with the coaling or heating of the building in question, but that this was attended to by the other tenant, Mullin & Earl, pursuant to an arrangement between themselves and the landlord, and it would seem illogical to claim, in view of that situation, that the defendant intended to assume liability for accidents arising from the negligent maintenance, operation or use, of an instrumentality with which it had no actual concern, and over which it exercised no active control or supervision.   The lease provides that the elevator service

was to be for the use of *both* tenants, and the terms of the lease expressly limited the liability of the defendant for elevator accidents, to such as may occur as incidental to the running of the elevator. There is another covenant in the lease relating to the windows and plate glass which expressly imposes upon the defendant the obligation to replace the glass which has become broken from any cause whatsoever. This language, in no uncertain terms, imposes a liability on the defendant for the negligence of others in breaking windows or plate glass, and the absence of language of similar import in the clause in question strengthens the contention that the defendant never intended to assume liability for accidents in front of the premises due to the negligence of others. *Manhattan Co.* v. *Cornell,* 54 Hun, 292.

Counsel for the plaintiff cites as an authority, the case of *Long Island R. R. Co.* v. *American Bridge Co.,* 175 App. Div. 170, but the case is easily distinguishable from the present one. In that case the language was sufficiently broad to impose a liability upon the defendant for injuries sustained in the progress of the work, the very work which the defendant agreed to perform. There was a connection or relation between the accident and the work being performed by the defendant, the former occurring out of the latter, but in the case at bar the maintenance, use and operation of the coal-hole was not an adjunct to any use of the occupation of the premises leased by the defendant. So far as it appears, the coal-hole in question was not directly or indirectly connected with any use by the defendant of the premises occupied by it. This being so, I do not think the clause in question should be construed to impose any liability on the defendant for the accident in question. The canons of construction placed upon contracts of indemnity by the courts, seem to be in

Appellate Term, Second Department, December, 1918.    [Vol. 105.

accordance with this reasoning. In the case of *Washington & Berkeley B. Co.* v. *Pennsylvania S. Co.,* 215 Fed. Repr. 34, the court said: " The presumption is exceedingly strong against an undertaking by any one except an indemnity company to be responsible for the negligent acts of another. But no reasoning nor analysis is necessary to make plain that the phrase, ' the omission or negligence of itself,' means the omission or negligence of the person undertaking, that is, the steel company; and that the word, ' otherwise,' under the principle of *ejusdem generis,* means accidents for which the steel company would for some other reason than that expressed be responsible."

And in the case of *North American Cons. Co.* v. *Cincinnati Traction Co.,* 172 Fed. Repr. 216, the court said: " Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other — over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified."

And the following from 22 Cyc. (at pp. 84, 85): " Indemnity contracts like other contracts are to be so expounded as to effectuate the intention of the parties. Thus in ascertaining the intention of the parties, the court must take into consideration not only the language of the contract but the situation of the parties and the circumstances surrounding them at the time the contract was made. Where a doubt arises from

any ambiguity or obscurity in the language the court will incline against the party whose words are the matter to be construed. So in determining the meaning of a provision in a contract, the contract must be read in its entirety. The extent of the condition of an indemnity bond may be restrained by the recitals, although the words of the condition import a larger liability than the recitals contemplate. Contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms. So no presumption will be indulged that the parties intended to make a contract contrary to law and public policy."

The judgment is reversed and the complaint of the plaintiff dismissed on the merits, with costs.

CLARK and KELBY, JJ., concur.

Judgment reversed, with costs.