CHARLES FEUER, Respondent, v. MENKES FEUER, INC. et al., Appellants.

First Department, June 2, 1959.

*Herman S. Axelrod* of counsel (*Maitland M. Axelrod* with him on the brief; *Axelrod & Axelrod,* attorneys), for appellants.

*David F. Cohen* of counsel (*Israel Rubin,* attorney), for respondent.

BREITEL, J. Defendants appeal from an order and judgment granting plaintiff partial summary judgment for $3,300 based on an indemnification agreement by plaintiff with the defendants. The individual parties had all been associated together in the defendant corporation, and when plaintiff severed his relationship he was given the agreement in question.

Of the several issues raised, two are of sufficient significance to merit discussion. The first is whether the indemnification

agreement, insofar as it would authorize reimbursement to plaintiff for customs fraud penalties, is valid and enforcible. The second question is whether plaintiff's money settlement of the prosecution for customs fraud penalties was a voluntary one or whether it was one for which he would be entitled to reimbursement under the agreement. Although the answer to the second question requires that partial summary judgment be denied, it is nevertheless necessary to discuss the first question because, if their contention is correct, defendants would be entitled to summary judgment.

The corporate defendant, Menkes Feuer, Inc., was a dealer in hides, skins and leather. It had been founded in 1921 by defendant Menkes Feuer, who is a brother of plaintiff and the father of the other individual defendant, Irwin Feuer. All three had been associated for many years with the corporation and its business. In 1955 plaintiff and defendants agreed that plaintiff should withdraw from the business. In connection with his leaving and the settlement of the financial obligations among the parties a written agreement was prepared. It provided that plaintiff would be indemnified for " any expense, liability, claim or alleged claim, by anyone whatsoever, arising from his former connection with Menkes Feuer, Inc.". It also required plaintiff to notify the other parties of any claim that might be made against him. The agreement was eventually executed February 3, 1956.

In 1955, before the indemnity agreement had been executed, the United States Government had brought suit against the corporation for alleged shortages in duties under customs declarations for alligator leather imported by the corporation during the years 1950–1952. In May, 1956 the Government instituted an action against the three officers of the corporation, including plaintiff, under section 1592 of title 19 of the United States Code. The statute imposes maximum penalties equivalent to the total value of the merchandise .involved.* As a conse-

---

* The text of the statute reads in relevant portion as follows: " If any consignor, seller, owner, importer, consignee, agent, or other person or persons enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 1485 of this title (relating to declaration on entry) without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of the lawful duties, or any

quence, there was an exposure to liability in excess of $150,000. Notably, while section 1592 provides for a civil recovery, the proscribed conduct also constitutes a crime (U. S. Code, tit. 18, § 542).

Defendants, of course, knew of the action, and undertook to defend it for all parties, but plaintiff refused to permit that. Instead, he insisted upon his own legal representation and handling of the lawsuit. In 1958 a settlement was worked out by the attorneys for all defendants in the Federal action. Under the settlement the defendants in this case paid approximately $20,000; and plaintiff paid $3,300. With respect to plaintiff's contribution a judgment was entered and that judgment was satisfied by him on March 27, 1958.

On the foregoing facts plaintiff sought, in this action, to be indemnified for the $3,300 he had paid to the Federal Government and for counsel fees and expenses in the amount of $5,000 he had incurred in defending the Federal action. Special Term granted partial summary judgment with respect to the sum paid in settlement, namely $3,300, and severed the action as to the residual claim for counsel fees and expenses.

Defendants contend that an agreement to indemnify another for the penal consequences of a crime or other illegal act is not enforcible. They also contend that plaintiff improvidently refused to permit them to defend the action on his behalf and that his settlement was a purely voluntary one. By a voluntary payment, of course, defendants mean a payment which plaintiff was not legally obligated to pay. Hence, they say, he is not entitled to reimbursement.

There may be no dispute that one may not contract for indemnification for the consequences of a criminal or illegal act to occur in the future. (E.g., *Mattera* v. *Mele,* 263 App. Div. 550; 42 C. J. S., Indemnity, § 7, p. 573.) But the distinction has always been sharply made, with contrary effect, with respect to agreements to indemnify one *post factum* for the financial consequences of a crime or illegal act. In other words, one may

portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper or statement; or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the merchandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates."

make an agreement to be indemnified or to indemnify with respect to a crime or illegal act which occurred prior to the making of the agreement. This has been the law for many years throughout the United States and in this State. (*Armstrong* v. *Toler*, 11 Wheat. [24 U. S.] 258; *Hanauer* v. *Doane*, 12 Wall. [76 U. S.] 342, 348; *Curtis* v. *Leavitt*, 15 N. Y. 9, 244–247; *Burton* v. *Stewart*, 62 Barb. 194; *Given* v. *Driggs*, 1 Caines 450 [KENT, J.]; Restatement, Contracts, § 597, Illus. 2; 6 Williston, Contracts [Rev. ed.] § 1751; 27 Am. Jur., Indemnity, § 11; 42 C. J. S., *supra*, *loc. cit.* Cf., *Hocking Val. Ry. Co.* v. *Barbour*, 190 App. Div. 341, 345–346. See, for an early interesting discussion of the balancing of policy considerations, *De Groot* v. *Van Duzer*, 20 Wend. 390, 406–407, dissenting opinion by VERPLANCK, Sen.)

The reasons for the distinction last discussed should be apparent. Of course, any agreement which might encourage or further the prospective commission of a crime or other illegal act should receive no assistance from the law. On the other hand, with respect to past events, there may be many quite valid, and even desirable, purposes in allocating the ultimate financial responsibility among persons involved in a transaction or relation. Indeed, there are even some special situations in which the law recognizes the desirability of allowing indemnification for future acts provided they do not involve willful misconduct. The ordinary automobile liability policy would be an example in that category.

Pursuing the matter further, in this case the several parties were settling their financial problems among themselves and in the exchange of considerations it was inevitable that there be an allocation. The indemnification agreement made here was simply an implementation of that allocation. While it is not determinative of the result, it is significant that the indemnification agreement in this case was executed after the parties were aware that the Federal Government was making claim, at least against the corporation, for penalties in connection with the importation of the alligator hides.

The fact, however, that the agreement is a valid one is not dispositive of plaintiff's claim to reimbursement.

Unless there is specific provision in the contract of indemnity, an indemnitee is not required to give notice of claims against him to the indemnitor. (*Conner* v. *Reeves*, 103 N. Y. 527, 529–530; *Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y. 275, 278–279; *Whitaker* v. *Equitable Laundry Mach. Corp.*, 131 Misc. 505, affd. 223 App. Div. 881; 42 C. J. S., Indemnity, § 15.) If such notice is given, however, the indemnitor may then elect to defend the action.

If he elects to defend, then he will be bound by the outcome on principles of *res judicata*. (*Oceanic Steam Nav. Co.* v. *Campania Transatlantica Espanola*, 144 N. Y. 663; 1 Freeman, Judgments [5th ed.], § 446.) If, however, the indemnitor declines to defend the proceeding, and the indemnitee is therefore required to carry that burden, then the indemnitor is conclusively bound by any reasonable good faith settlement the indemnitee may make or any litigated judgment that may be rendered against him. (*Bridgeport Ins. Co.* v. *Wilson, supra*; *Village of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550, 557; *Morette* v. *Bostwick*, 127 App. Div. 701; *City of Fulton* v. *Great Amer. Ind. Co.*, 11 Misc 2d 536, 540, affd. 7 A D 2d 832; 1 Freeman, Judgments, *supra*, § 447 *et seq.* As to the circumstance of whether the judgment is litigated or not, see *Conner* v. *Reeves, supra.*)

On the other hand, if the indemnitee fails to notify the indemnitor, or having notified him, refuses to accept proffered assistance, he proceeds at his own risk with regard to any judgment or settlement which may ultimately ensue. Then, in order to recover reimbursement, he must establish that he would have been liable and that there was no good defense to the liability. (E.g., *Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214, 218; *Bridgeport Ins. Co.* v. *Wilson, supra*; *White* v. *Maryland Cas. Co.*, 139 App. Div. 179, 185; *Lissner* v. *Haynes Automobile Co.*, 105 Misc. 359, affd. 188 App. Div. 935; *Chicago Rock Is. & Pacific R. R. Co.* v. *Dobry Flour Mills*, 211 F. 2d 785, cert. denied 348 U. S. 832; 42 C. J. S., Indemnity, § 14 subd. c, par. [2], § 35.) Moreover, he must establish that with respect to the amount paid it was a reasonable amount. (*Weeks & Son* v. *Webb*, 140 App. Div. 450; *Lee* v. *Town of Saratoga*, 160 App. Div. 112, affd. 214 N. Y. 617.)

In this context it should be noted that the test of reasonableness applies not to the fact of liability but only to the amount that may be paid by way of settlement of such liability. Nor is good faith alone a sufficient test, as it might be in the earlier instance noted. Thus, in the *Dunn* case (*supra*, p. 218) it was observed that the indemnitee " assumes the risk of being able to prove the actionable facts upon which his liability depends *as well as* the reasonableness of the amount which he pays " (emphasis supplied). This means, in effect, that the indemnitee must establish his case against the indemnitor in the same way that the claimant against him would have been obligated to establish its case, namely, by a preponderance of the evidence or other appropriate level of proof required to sustain recovery in favor of the claimant. (*Chicago, Rock Is. & Pacific R. R. Co.* v. *Dobry Flour Mills*, 211 F. 2d 785, cert. denied 348 U. S. 832, *supra*; cf. semble contra, *Damanti* v. *A/S Inger,* 153 F. Supp. 600.)

The explanation for the higher requirement that an indemnitee, who has not given notice, or who has rejected defense by the indemnitor, establish that he had been liable to the claimant stems from the fact that his action with regard to the claim is completely free of control by the indemnitor. Since, under such circumstances, the indemnitee knows or believes that any financial responsibility he undertakes is likely to fall ultimately on the indemnitor, he is not inhibited, except by the barest self-restraint. This is an insufficient protection for an indemnitor; and, as a consequence, the indemnitee acts at his own risk that later he will be able to establish that the payment he made was one he had to make. Needless to say, even this is not an absolute test. He meets his burden if he shows, by satisfying the finder of the facts by the preponderance of the evidence or other appropriate level of proof, that he would have been liable.

In this case it is strongly urged that the amount paid by plaintiff, namely $3,300, was only a fraction of the amount paid by the other defendants, namely, about $20,000. It is, therefore, further argued that this establishes for purposes of summary judgment both that plaintiff was liable to the Federal Government and that the amount he paid in settlement was a reasonable one. The matter is not that simple.

Under the Federal statute, before the penal sums may be imposed on an individual there must be a showing that the individual knowingly and willfully participated in the statutory violation. As a consequence, the respective risks of liability among the several individuals in the Feuer corporation are not necessarily on a parity.

Moreover, plaintiff in his affidavit urged that his activities with the corporation were in a department which did not handle the particular importation which had incurred the Government's claim. He argued thus, in order to fend off the charge that the indemnity agreement was to secure him against his own criminal acts and that, therefore, he was not *in pari delicto* with the individual defendants in this case. Without going further, this clearly shows that there is at least an issue of fact whether plaintiff would have been liable to the Federal Government for the penalties in suit. It then necessarily follows, too, if all of the individual defendants were not similarly exposed that the amount paid in settlement may not be determined to be reasonable merely because plaintiff's contribution was a fraction of the amount paid by the others.

Accordingly, there are issues of fact to be tried and the judgment and order of Special Term granting partial summary judg-

ment should be reversed, on the law, and plaintiff's motion for summary judgment denied in all respects, with costs to abide the event.

BOTEIN, P. J., RABIN, VALENTE and McNALLY, JJ., concur.

Order and judgment unanimously reversed, on the law, with costs to abide the event, and plaintiff's motion for summary judgment denied in all respects with $10 costs.