**Archie SHEPP, Plaintiff,**

**v.**

**Werner X. UEHLINGER Personally and d/b/a Hat Hut Records, Defendant and Third Party Plaintiff, Appellee,**

**v.**

**Max ROACH, Third Party Defendant, Appellant.**

**No. 84–1571.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1985.

Decided Oct. 25, 1985.

author block below

Stephen A. Brusch, New York City, with whom Donna L. Comegys, Margaret A. Burnham, Stern & Shapiro, Boston, Mass., Gilbert A. Holmes, and Holmes & Meehan, New York City, were on brief for appellant.

Bart J. Gordon, Boston, Mass., with whom Bulkley, Richardson & Gelinas, Springfield, Mass., were on brief for appellee Uehlinger.

Before BOWNES and BREYER, Circuit Judges, and CEREZO,* District Judge.

* Of the District of Puerto Rico, sitting by designation.

BREYER, Circuit Judge.

Max Roach, a well-known jazz musician, appeals a jury's breach of contract award to Werner Uehlinger, who makes and distributes jazz records. The relevant contract essentially provided that Uehlinger would distribute a two-record set of Willisau Jazz Festival performances by Roach (drums) and Archie Shepp (tenor saxophone). Uehlinger would pay Roach $10,-000 (plus a percentage after the first six thousand sales) for the rights to distribute the recording. The paragraph of the agreement most directly in issue said:

> You [Roach] represent that you have full authority to grant to [Uehlinger] the rights contained herein, that [Uehlinger] has and shall have no financial obligation to anyone other than you in connection with the grant of such rights (including SHEPP) and that you will satisfy and pay to SHEPP any sums due and payable to him from the production, distribution and sale of recordings hereunder.

Just before releasing the records, Uehlinger told Roach that Shepp had complained that he had never actually agreed with Roach about how much money he would receive. There followed various negotiations among Uehlinger, Roach and Shepp. But, the upshot was discord: Shepp wanted nearly half the money; Roach thought Shepp could not possibly (as a customary or equitable matter) be entitled to more than one-third.

Uehlinger put the records out anyway, looking to Roach to hold him harmless. Shepp then sued Uehlinger for copyright infringement. Uehlinger brought a third party complaint against Roach. Uehlinger settled with Shepp for $7,500. And, the Uehlinger-Roach case went to trial.

Uehlinger argued to the jury that Roach did not possess Shepp's permission to allow Uehlinger to make the record. He claimed that Roach thereby breached the contractual term quoted above. He said that the contractual language gave Uehlinger the right to damages flowing from the breach,

in particular, to the money Uehlinger had paid to Shepp (along with attorneys' fees and other expenses). The jury, for the most part, agreed, awarding Uehlinger about $8000. Roach appeals.

■ 1. Roach argues that the jury's verdict as to the key fact—whether Shepp had, or had not, given Roach the necessary authority—impermissibly rests upon hearsay evidence. We agree that the fact was key and contested. (Roach, for example, testified that Shepp said, "Max [Roach], anything you do is okay with me"—a phrase that in the context of industry practice arguably meant that Shepp would simply look to Roach for a fair payment.) We also agree that Uehlinger largely relied upon hearsay to establish the lack of authority. For example, Shepp's lawyer (testifying as a witness) said that Shepp never gave Roach the necessary authority, and he read to the jury the Uehlinger-Shepp settlement agreement, which stated in relevant part:

> Mr. Shepp acknowledges that he did not authorize Mr. Roach to act as his agent with respect to Mr. Shepp's rights....

Several letters in evidence contained supporting hearsay evidence, such as a letter written by Uehlinger, which said:

> Archie [Shepp] came now back to me in saying that he agreed about a release, but that the exact amount of money involved has never been discussed or decided.

We do not agree, however, that jury reliance upon this hearsay evidence was "impermissible." For one thing, Roach's attorney did not object to the admission of this evidence when it was offered. Indeed, he explicitly said that he had no objection to the admission of several of the documents. And, he himself elicited certain evidence that arguably rested upon hearsay, as in the following interchange between Roach's attorney and Shepp's attorney (testifying as a witness):

> Q. But was it your understanding, Mr. Howland, that Mr. Shepp, your client, had not given any authority to Mr. Uehlinger to go ahead and cut

this record—is that your understanding when you filed the suit?

> A. Yes, that is true.

■ Although Roach's counsel eventually objected to "the letters, the documents ... [being] admitted for their truth," that objection came too late. He objected on the second day of the three-day trial, the day after the evidence had been admitted and after Uehlinger had presented most of his case. It is hornbook law, followed in this circuit, that counsel

> must object to the admission of evidence as soon as the ground becomes apparent ... [usually] as soon as the question is asked....

McCormick, *Evidence* § 52, at 113 (Cleary ed. 1972); *Reagan v. Brock*, 628 F.2d 721, 723 (1st Cir.1980). It would be particularly undesirable to allow a lawyer to wait until other evidence is introduced, assess its impact, and then make a tardy objection. Here, the ground for objection was apparent when the evidence was first presented; and Roach provides no justification for failure to make his objection timely.

■ For another thing, the jury was legally free to rest its determination on this properly admitted hearsay evidence. Roach points to several older New York cases holding that hearsay evidence alone cannot support a verdict; there must be a "residuum" of nonhearsay evidence. *In re Carroll v. Knickerbocker Ice Co.*, 218 N.Y. 435, 440, 113 N.E. 507, 509 (1916); *cf. Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Aside from the fact that counsel made no such argument in the district court (and therefore, in fairness, might be taken to have waived the point), the "residuum" rule is inapplicable. The rule arose in the context of administrative proceedings where counsel has no general right to object to the admission of hearsay evidence. To our knowledge, no court has ever applied the rule outside the limited context where counsel has no right to object to the admission of hearsay. *Cf. Levins v. Bucholtz*, 2 A.D.2d 351, 155 N.Y.S.2d 770

(1956) (although hearsay is generally admissible in New York small claims court, judgment may not rest solely on hearsay). And, recent cases repudiate the "residuum" rule even in the field of administrative law. *Eagle v. Paterson,* 57 N.Y.2d 831, 833, 442 N.E.2d 56, 455 N.Y.S.2d 759 (1982); *300 Gramatan Ave. Ass'n v. State Division of Human Rights,* 45 N.Y.2d 176, 180, 379 N.E.2d 1183, 408 N.Y.S.2d 54 (1978); *see also Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Johnson v. United States,* 628 F.2d 187 (D.C.Cir.1980).

In any event, here a "residuum" of non-hearsay exists. Evidence, such as Shepp's counsel's statement quoted above, for example, may rest *partly* upon hearsay (*e.g.,* Shepp's out-of-court statement to his counsel), but it may also rest upon inferences drawn from counsel's own conduct (his not having granted Shepp's permission to Roach) along with his own observation of the conduct of others (for example, the negotiations among the various parties). *See* Fed.R.Evid. 801(a) & Advisory Committee note. Indeed, insofar as Roach's counsel made authorized statements during such out-of-court negotiations, they are "admissions," which, under Fed.R.Evid. 801(d)(2)(D), are *not* considered hearsay. Letters by Roach's counsel offer a similar nonhearsay basis for such inferences.

■ 2. Roach argues that Uehlinger failed to present enough evidence for the jury reasonably to conclude that the claim that Uehlinger settled, namely Shepp's copyright infringement claim, was valid. Roach cites, in support, for example, *Feuer v. Menkes Feuer, Inc.,* 8 A.D.2d 294, 187 N.Y.S.2d 116 (1959), a New York state indemnity case, which says:

> If [upon notice] the indemnitor declines to defend the proceeding ... then the indemnitor is conclusively bound by any reasonable good faith settlement the indemnitee may make.... [I]f the indemnitee fails to notify the indemnitor, or having notified him, refuses to accept proffered assistance, he proceeds at his own risk with regard to any judgment or

settlement which may ultimately ensue. Then, in order to recover reimbursement, he must establish that he would have been liable and that there was not a good defense to the liability.

187 N.Y.S.2d at 121–22. Since Uehlinger notified Roach (the indemnitor) of Shepp's suit (and for reasons set forth in subsection 3 below), we are not certain that this case supports Roach's assertion that Uehlinger was, as a matter of New York law, obligated to prove his liability to Shepp in order to collect from Roach. *See H.S. Equities, Inc. v. Hartford Accident & Indemnity Co.,* 609 F.2d 669, 674 n. 8 (2d Cir.1979) (questioning validity of *Feuer*). But, in any event, Uehlinger produced sufficient evidence of his copyright liability.

The jury received in evidence Shepp's complaint, which had copies of Shepp's copyright registration forms (for both composition and performance copyrights) attached. The fact of Uehlinger's use of both was undisputed. And, the jury had evidence sufficient to find that Shepp had not given Uehlinger the necessary permission. Moreover, Uehlinger testified that, after talking to his lawyers, he believed that Shepp's claim was a "proper one" which he could not "defend ... against."

■ Roach here says that Uehlinger might have argued certain technical failings in Shepp's copyright registration form as a defense to Shepp's infringement count; and, Roach adds, Uehlinger failed to show the absence of such a defense. Roach, however, made no specific mention of these points before the district court. They are not so obvious that either court or jury would have thought of them on its own without some effort to bring the issue to its attention. And, without some such effort, we suspect an inference of the nonexistence of a fairly esoteric and questionable defense was reasonable. Regardless, the court's jury instructions, to which Roach did not object, permitted the jury to find liability without reference to the potential existence of this technical defense. *Moomey v. Massey-Ferguson, Inc.,* 429 F.2d 1184, 1187 (10th Cir.1970) (jury instructions

not objected to at trial are 'law of the case'). This fact, along with defendant Roach's failure to call anyone's attention to this issue, amounts to a waiver of the point. 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2558, at 670 (1971); *Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir.1985).

3. Roach notes that Uehlinger submitted the case to the jury on *two* theories: a "breach of contract" theory *and* an "indemnity" theory. He says that if the evidence was insufficient to support *either* of these theories, there must be a new trial, for we cannot know which theory the jury used as a basis for its judgment. *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 662 (1st Cir.1981). Roach goes on to claim that the evidence was insufficient to support a finding that he was obliged to indemnify Uehlinger.

Roach's argument here is complex. It depends upon the fact that the judge instructed the jury it could find an indemnity obligation "based upon either an express or an implied contract for indemnification." Roach says that New York requires very explicit contractual wording (absent here) to find an *express* promise to indemnify. *Margolin v. New York Life Insurance Co.*, 32 N.Y.2d 149, 297 N.E.2d 80, 344 N.Y.S.2d 336 (1973); *Emery v. Depot Construction Co.*, 75 A.D.2d 102, 429 N.Y.S.2d 54 (1980), *aff'd*, 53 N.Y.2d 971, 424 N.E.2d 556, 441 N.Y.S.2d 669 (1981); *see also Mostyn v. Delaware, L. & W.R. Co.*, 160 F.2d 15, 19 (2d Cir.) (L. Hand, J.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947). He adds that the New York standard for implied indemnification permits an application of indemnity only

> [to allow] one who was compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party.

*D'Ambrosia v. City of New York*, 55 N.Y.2d 454, 460, 435 N.E.2d 366, 450 N.Y.S.2d 149, 151 (1982). And, he says, the evidence here was insufficient to allow a jury to infer wrongdoing by Roach or the "innocence" of Uehlinger.

■ There is nothing in the record indicating that the first of these arguments was called to the district court's attention. And, after reading the record, we disagree with the latter, "insufficient evidence," point. Regardless, a complete (though perhaps redundant) answer to Roach's argument is as follows: Uehlinger did not succeed in presenting to the jury the theory of "implied indemnification"—a theory that bases the obligation not upon a contract, but upon the relationship of the parties. *Id.* Uehlinger offered a jury instruction embodying this theory, but the judge, in omitting part of the instruction, in effect tied the indemnification obligation to breach of the Roach-Uehlinger contract. Thus, "indemnification implied from status" is beside the point.

New York's "express indemnification promise" cases are also, in a sense, beside the point, for Uehlinger never argued that there existed a separate, express agreement to indemnify Uehlinger. Rather, as presented to the jury, the judge's instructions effectively collapsed the "indemnification" and "breach of contract" theories into one single basis for liability, namely a breach of the promises contained in the contract language we have quoted above. *See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 130, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956). To have found an obligation to indemnify under the judge's "indemnification" instruction, the jury, as a practical matter, would have also had to find a failure to fulfill expressed or implied promises contained in that contractual language.

Similarly, in context, the damage remedies under either theory were identical. We do not see how this jury, given the evidence and argument, could have found that Roach owed Uehlinger $7,917.87 in damages as "indemnification" without also concluding that those same damages flowed from a violation of the obligations imposed by the contract. Thus, in context, the "indemnification" theory added nothing

significant to the "contract breach" theory. To have found liability under the indemnification theory, the jury, as instructed, would have had to find liability under the "breach of contract" theory; thus, even if we assume some error of presentation as a matter of New York indemnification law (and if we assume a proper objection), any error of the sort here claimed was harmless.

■ 4. Roach also argues in his brief that the judge should have instructed the jury that Uehlinger might have mitigated his "contract" damages by rescinding the contract and not distributing the record, thereby avoiding liability to Shepp. But, the judge's decision not to give this instruction was correct. There was virtually no evidence that 'rescission' was possible, that Roach would have been willing to give back his advance of $5000 or that Uehlinger's business decision to release the album was an unreasonable exacerbation of damages. *See Restatement (Second) of Contracts* § 350(2) comment h (1979). Given the absence of any evidence to support a jury finding that rescission was a course open to Uehlinger, the court properly refused the proffered instruction. *See Sears, Roebuck & Co. v. Penn Central Co.*, 420 F.2d 560, 564 (1st Cir.1970); *see also McKinnon v. Skil Corp.*, 638 F.2d 270, 274 (1st Cir.1981).

■ 5. Roach says that the court should not have told the jury that certain union regulations (governing the relative pay for a "lead man" and a "side man") were "immaterial." The court, in fact, said:

> [T]he only question in this Court is the contract, if any, between the Plaintiff [Uehlinger] and Mr. Roach and whether or not Mr. Roach is bound by any Union regulations or not is immaterial as far as this case is concerned.

This statement of the law, in the context of the case, seems correct. The fact that Roach might have put himself in a position where he could not fulfill both his union obligations and his obligations under the Uehlinger-Roach contract does not excuse his breach of the latter and is immaterial. If Roach wanted to show that the union regulations somehow constituted part of the contract and that this fact somehow made a difference, the judge's statement allowed him ample opportunity to do so.

For these reasons, the judgment of the district court is

*Affirmed.*