UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 94-1608

 AGNES VERA-LOZANO,

 Plaintiff - Appellee,

 v.

 INTERNATIONAL BROADCASTING,

 Defendant - Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Raymond L. Acosta, Senior U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 

 Boudin, Circuit Judge, 

 and Boyle,* Senior District Judge. 

 

 Igor J. Dom nguez-P rez, with whom Igor J. Dom nguez Law 
Offices was on brief for appellant. 
 Charles S. Hey-Maestre, with whom Peter Berkowitz and Rick 
Nemcik-Cruz were on brief for appellee. 

 
 March 22, 1995

 

  

* Of the District of Rhode Island, sitting by designation.

 Boyle, Senior District Judge. International Boyle, Senior District Judge 

Broadcasting Corporation (IBC) appeals a judgment based upon a

jury verdict in favor of Agnes Vera-Lozano on her claims under

Title VII of the Civil Rights Act of 1964 and Puerto Rico Laws 3

and 100. IBC claims that the district court committed reversible

error when it denied IBC's Rule 50 motions for judgment as a

matter of law. IBC also contends that the lower court improperly

exercised supplemental jurisdiction over claims arising from

Puerto Rico Laws 3 and 100. Finally, IBC claims that the lower

court erred in awarding compensatory damages and excessive back

pay. For the following reasons we affirm the court below.

 I. BACKGROUND I. BACKGROUND

 Appellee, Vera, filed a complaint with the Anti-

Discrimination Unit of the Puerto Rico Department of Labor (UAD),

alleging employment discrimination under Title VII of the Civil

Rights Act of 1964. She duly notified the Appellant, IBC, who

did not respond at that time. The UAD determined that probable

cause existed for a discrimination suit based on sex and

pregnancy.

 The complaint in the action below was filed on June 2,

1992, in the United States District Court for the District of

Puerto Rico. The complaint alleged claims arising under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., 

and invoked the court's supplemental jurisdiction to hear claims

 -2-

arising under Puerto Rico Law 3, 29 P.R.L.A. 467, et seq., and 

Law 100, as amended, 29 P.R.L.A. 146, et seq. Jurisdiction was 

exercised pursuant to 28 U.S.C. 1331, 2201 and 2202.

 Vera was a full-time master control operator for Three

Star Telecast Corp. (Three Star), which owned and operated

Channel 18 from 1984 until December 21, 1990, when the station

was taken over by IBC. The master control unit regulates the

receiving and broadcasting of television transmissions. There

were six master control operators at Three Star; Vera was the

most senior.

 Pedro Rom n-Collazo was at all relevant times

President, General Manager, and owner of IBC. During Rom n's

tenure, IBC purchased the permit to broadcast on Channel 18 as

well as other assets of Three Star Telecast. Grisel Torres, an

employee of IBC, became the general manager of Channel 18.

 On December 21, 1990, the last day Three Star operated

Channel 18, it laid off twenty employees, retaining only four.

The new owner assured the dismissed former employees that they

would be rehired. In fact, several days prior to the takeover,

Torres, instructed Philbert Modeste, who had been retained by IBC

to continue as the engineer in charge of the master control unit,

to prepare a list of three former Three Star employees to be

hired. That list included Vera. Modeste testified at trial that

when he submitted the list to Torres, she told him that Vera was

not eligible because "she was going to have a baby."

 Vera gave birth on January 22, 1991. In early

 -3-

February, she went to Modeste seeking employment. He told her

that he would contact Torres about a possible position for her.

IBC, however, never contacted Vera despite the fact that the

company was seeking a master control operator. Vera discovered

that an opening existed at IBC from a newspaper advertisement.

In response to this advertisement, Vera again contacted Modeste.

Again, he asked her to resubmit her resume. IBC did not hire

Vera. Instead, the position was filled by a man, Pablo Mart nez,

who had never worked for Three Star.

 II. RULE 50 MOTION II. RULE 50 MOTION

 IBC made a Rule 50 motion for judgment as a matter of

law at the close of Vera's case. IBC alleged that it was not

covered by Title VII because it did not have the requisite number

of employees. This motion was renewed after the close of the

defendant's case.

 Title VII of the Civil Rights Act of 1964 makes it

unlawful for an employer to discriminate against an employee on

account of gender or pregnancy. See 42 U.S.C. 2000e-2. For 

the purposes of that statute "employer" is defined as "a person

engaged in an industry affecting commerce who has fifteen or more

employees for each working day in each of twenty or more calendar

weeks in the current or preceding calendar year." 42 U.S.C. 

2000e. Since IBC did not own the assets of Three Star until

December 21, 1990, IBC cannot be an employer for that calendar

 -4-

year.

 Section 2000e-2 makes it unlawful for an employer "to

fail or refuse to hire or to discharge any individual, or

otherwise discriminate against any individual . . . because of

such individual's . . . sex." The record shows that Vera

reapplied for her former position of master control unit operator

on two separate occasions in 1991. IBC's denial of employment

was ongoing during that time. The "current year" then, as

defined by the statute, is 1991. See Dumas v. Town of Mount 

Vernon, Ala., 612 F.2d 974, 979 n.4 (5th Cir. 1980). 

 IBC argues that part-time employees should be counted

as employees for a given week only if they actually work all five

days of that week. We considered this question in Thurber v. 

Jack Reilly's Inc., 717 F.2d 633 (1st Cir. 1983), and found the 

law in this circuit to be to the contrary. In Thurber, the 

defendant was a small bar in Cambridge, Massachusetts. See id. 

Although the defendant had only nine full-time employees, at

least fifteen employees were on the payroll for more than twenty

weeks during the relevant calendar year. See id. at 634. On any 

given day, only eleven of these employees reported for work. See 

id. We concluded that the defendant was an employer for the 

purposes of Title VII. See id. We reasoned that the relevant 

employees were not only those who were physically present at the

bar each day, but all those who had an ongoing employment

relationship with the employer during the requisite twenty weeks.

See id. (citing Pedreyra v. Cornell Prescription Pharmacies, 465 

 -5-

F. Supp. 936, 941 (D.Colo. 1979); Hornick v. Borough of Duryea, 

507 F. Supp. 1091, 1097 (M.D.Pa. 1980)).

 This reasoning is persuasive especially in light of

Title VII's legislative history. While Congress did express

concern for the over-regulation of small businesses, it appears

to have adopted the definition of "employer" from the

Unemployment Tax Act. See 100 Cong. Rec. S13087 (daily ed. June 

9, 1964) (statement of Sen. Dirksen). An employee is counted

under that statute for each day that an employment relationship

exists regardless of whether the employee reported to work each

day. See Rev. Rule 55-19, 1955-1 C.B. 496. As we noted in 

Thurber, although it is true that such a reading of the statute 

may bring within its ambit a number of truly "Mom and Pop"

establishments, the burden on these businesses would not be a

considerable one; simply put, they could not discriminate. See 

Thurber at 635. 

 Counting both part-time and full-time employees on the

payroll during 1991, there is sufficient evidence on the record

in the form of testimony of Vera and Rom n to support finding

that IBC was an employer as defined by Title VII. For this

reason we find that the district court's denial of the Rule 50

motions was not in error.

 III. SUPPLEMENTAL JURISDICTION III. SUPPLEMENTAL JURISDICTION

 IBC contends that the district court improperly

 -6-

exercised supplemental jurisdiction over the claims arising under

the Puerto Rico statutes.

 In 1990, Congress enacted 28 U.S.C. 1367, which

granted federal courts "supplemental jurisdiction" or what had

formerly been referred to as "pendent jurisdiction" and

"ancillary jurisdiction." This section states that "in any civil

action over which the district courts have original jurisdiction,

the district courts shall have supplemental jurisdiction over all

other claims that are so related to claims in the action . . .

that they form part of the same case and controversy." 28 U.S.C.

 1367 (1993).

 This statute codified the Supreme Court's analysis in

United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See Sinclair 

v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991); Bridges v. 

Eastman Kodak Co., 800 F. Supp. 1172, 1178 (S.D.N.Y. 1992). The 

Court stated in Gibbs that a federal court may exercise 

supplemental jurisdiction over a state claim whenever it is

joined with a federal claim and the two claims "derive from a

common nucleus of operative fact" and the plaintiff "would

ordinarily be expected to try them both in one judicial

proceeding." Gibbs, 383 U.S. at 725; Brown v. Trustees of 

Boston University, 891 F.2d 337, 356 (1st Cir.), cert. denied, 

496 U.S. 937 (1989). The statute expressly states that a

district court may refuse to exercise this jurisdiction if the

state claim "substantially predominates over the claim or claims

over which the district court has original jurisdiction" or "the

 -7-

claim raises a novel or complex issue of state law." 28 U.S.C.

 3567(c)(1), (c)(2).

 IBC does not dispute that the federal and state claims

arise out of the same set of facts. IBC's only argument is that

the district court abused its discretion in exercising

jurisdiction over the state claims because the state statutes

have different standards of proof and may therefore confuse the

jury.

 Because the decision whether to exercise supplemental

jurisdiction is left to the broad discretion of the district

court, this decision will be disturbed only upon finding an abuse

of discretion. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 

1991); McCaffrey v. Rex Motor Transport, Inc., 672 F.2d 250 (1st 

Cir. 1982). Here there is clearly no such abuse: the state

claims do not predominate; Vera points to no novel issue of state

law; and joint adjudication serves the interest of judicial

economy and fairness. We therefore find that the district court

properly exercised supplemental jurisdiction.

 IV. JURY TRIAL IV. JURY TRIAL

 IBC claims that the district court committed reversible

error when it tried the case before a jury. The Constitution of

Puerto Rico does not afford litigants in a civil action the right

to trial by jury. IBC contends therefore that the district court

erred in allowing a jury to determine facts needed to decide the

 -8-

claims arising under the laws of Puerto Rico.

 This claim is without merit. It is well accepted that

the Seventh Amendment affords litigants in federal courts in

Puerto Rico the right to trial by jury, notwithstanding the fact

that the Constitution of Puerto Rico does not allow for juries in

civil cases. See Marshall v. P rez Arzuaga, 828 F.2d 845, 849 

(1st Cir. 1987), cert. denied, Avis Rent-A-Car of Puerto Rico, 

Inc. v. Marshall, 484 U.S. 1065 (1988); LaForest v. Autoridad de 

las Fuentes Fluviales de P.R., 536 F.2d 443, 446 (1st Cir. 1976); 

see also Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 536-40 

(1958).

 V. DAMAGES V. DAMAGES

 IBC maintains that the trial court erred by allowing

the jury to award compensatory damages based on a retroactive

application of the Civil Rights Act of 1991. However, the

verdict form correctly allowed for an award of compensatory

damages based on the violation of either federal or Puerto Rico 

law. Because the jury's finding that IBC violated Puerto Rico

law would alone support the award of compensatory damages, the

submission of the claim based on the Civil Rights Act, if

incorrect, was harmless error and will not be disturbed on

appeal. See Shepp v. Uehlinger, 775 F.2d 452, 456-57 (1st Cir. 

1985); see also Gillentine v. McKeand, 426 F.2d 717, 724 (1st 

Cir. 1970).

 -9-

 IBC also complains that the amount of damages awarded

for back pay is not supported by the evidence. IBC failed to

raise this issue in the court below either during trial or in a

post-verdict motion to set-aside the verdict. As a general rule

a Court of Appeals will not consider an issue raised for the

first time on appeal absent exceptional circumstances. See 

Refuse and Environmental Systems, Inc. v. Industrial Servs., 932 

F.2d 37, 41 (1st Cir. 1992); Mello v. K-Mart Corp., 792 F.2d 

1228, 1233 (1st Cir. 1982). Here, there are no exceptional

circumstances and thus we consider the issue to be waived.

 Had IBC properly raised this issue below, the result

would be unchanged. For the party seeking to attack the amount

of jury-awarded damages, the applicable standard of review is

daunting. We will not disturb an award of damages for economic

loss "provided it does not 'violate the conscience of the court

or strike such a dissonant chord that justice would be denied

were the judgment permitted to stand.'" See Havinga v. Crowley 

Towing and Transportation Co., 24 F.3d 1480, 1489 (1st Cir. 

1994)(quoting Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st 

Cir. 1988)); Linn v. Andover Newton Theological School, Inc., 

874 F.2d 1, 6 (1st Cir. 1989). "Generousness of a jury's award

does not alone justify an appellate court in setting it aside."

Kolb v. Goldring, Inc., 694 F.2d 869, 871 (1st Cir. 1982). Under 

this standard the court should "examine the evidence in detail .

. . and in a light most favorable to the plaintiff." Havinga, 24 

F.3d at 1489.

 -10-

 There is ample support in the record for the jury's

verdict as to back pay. IBC's main contention is that Vera

failed to mitigate her damages by voluntarily resigning from a

job as a receptionist in February of 1992. IBC claims that back

pay should not be awarded during the period beginning with the

date of her voluntary resignation until the date the judgment was

entered. We will not supplant the jury's verdict nor second-

guess what may have been their thought process regarding the

voluntary nature of Vera's resignation or her efforts to

mitigate. This reluctance is especially appropriate in light of

evidence, in the form of Vera's testimony, supporting a possible

finding that the receptionist job provided no additional economic

support given the irregular work schedule, the cost of child care

for her two children and the low pay.

 VI. CONCLUSION VI. CONCLUSION

 For the foregoing reasons, we affirm.

 -11-