■ CHASE MANHATTAN BANK, Plaintiff, v 264 WATER STREET ASSOCIATES et al., Defendants. BROADSTONE OWNERSHIP GROUP, INC., Cross-Claim Plaintiff-Respondent, v JAMES BUDEN et al., Cross-Claim Defendants-Appellants. [634 NYS2d 687] —Order, Supreme Court, New York County (Helen E. Freedman, J.), entered on or about November 9, 1994, which, upon reargument, adhered to an earlier order granting partial summary judgment in cross-claim plaintiff's favor on the entire cross complaint, unanimously modified as indicated herein, on the law, the motion for summary judgment is denied with respect to the third, fourth and fifth cross claims, and otherwise affirmed, without costs. Appeal from the earlier order, same court and Justice, entered May 13, 1994, and from the judgment in the amount of $1,376,315.07, entered June 30, 1994, unanimously dismissed as superseded by the order on reargument, without costs.

Defendant 264 Water Street Associates ("WSA") was a joint venture between Ursa Minor, owned by defendants James and Clare Buden, and defendant Denison Industries, an affiliate of defendant Broadstone Ownership Group ("BOG"). WSA obtained a $7.4 million loan from plaintiff to finance a construction project near South Street Seaport in Manhattan. The mortgage debt was personally guaranteed by the Budens and BOG, and these two guarantors agreed between themselves to share liability equally in the event of a default on the loan. The joint venture agreement further contained an elaborate option provision (¶ 5.7), under which either venturer could, at any time, elect either to buy out the co-venturer's interest in the joint venture, or sell its own interest to the co-venturer. The offer, once made, would be "irrevocable" for 30 days, during which the co-venturer could decide whether or not to accept. As pertinent herein, paragraph 5.7 (f) further provided that the purchasing venturer under this option must use reasonable efforts to clear any financial obligations of the selling venturer or its affiliates and obtain release from any obligee therefor, and indemnify the selling venturer for its portion of any liability arising out of claims against the venture.

When WSA failed to meet a demand to cover a perceived cost overrun, and the guarantors could not agree upon curing this deficiency, plaintiff cut off advance of the remaining 15% of the financing and called for accelerated repayment of the loan. Plaintiff commenced this foreclosure action after its demand for full payment was ignored by WSA and the guarantors.

During the pendency of the main action, Ursa Minor

exercised the provisions of paragraph 5.7 of the joint venture agreement and offered Denison the option of either buying Ursa's interest or selling its own. Should Denison opt to sell, the stated terms of Ursa's purchase were to be $700,000 in the form of a note secured by a second mortgage on the Water Street property. Denison elected to sell, but the deal never closed because Ursa Minor was never able to obtain plaintiff's consent to placement of a second mortgage, which was required under the terms of the bank loan.

BOG and Denison then settled the foreclosure action for $1.1 million. Ursa Minor was not informed of this settlement until three weeks later, when BOG and Denison made demand for contribution of $550,000 under the agreement between the guarantors, and for indemnification under paragraph 5.7 of the joint venture agreement for liabilities in the amount of $1.1 million. BOG demands payment of $550,000 in the first ("common law equitable" contribution) and second ("contractual" contribution) claims of the cross complaint against the Budens, and $1.1 million in the third (indemnification under ¶ 5.7), fourth (impairment of guaranties) and fifth (fraud in the inducement) claims. The IAS Court, in granting summary judgment to the cross claimant, ruled that the duty of Ursa Minor and the Budens to indemnify BOG in the amount of $1.1 million was compelled by the plain language of the joint venture agreement. We disagree.

Ursa Minor's exercise of the paragraph 5.7 option, at least with respect to an election by Denison to sell its interest, was— under the terms of its offering letter of March 28, 1990— clearly conditioned on Ursa's ability to secure a second mortgage on the property to finance the $700,000 note. When plaintiff, holder of the first mortgage on the property, vetoed a second mortgage, that "ter[m] and condition" of Denison's option to sell its interest to Ursa was negated. At best, there exists a question of fact as to whether Ursa Minor bears any responsibility for failure to close that deal.

As to the first two claims, the Budens argue that BOG, as guarantor of Denison's mortgage obligation to plaintiff, was nonetheless not a denominated beneficiary of the indemnification provision of paragraph 5.7 (f) of the joint venture agreement. Only the selling venturer itself (Denison) was eligible for indemnification by the purchasing venturer (Ursa Minor) or its affiliates (the Budens), and since this cross complaint was brought by BOG and not Denison, the Budens argue that the "plain language of the contract" certainly does not support summary judgment.

But even the Budens concede that paragraph 5.7 (f) refers to indemnification, which is treated in the third, fourth and fifth cross claims. The first and second claims concern solely their obligation under the 1988 agreement to contribute toward liability as an equal guarantor. The issue here, as framed by the Budens, is that they were kept in the dark as to the settlement with plaintiff. Their argument in this respect must fail.

An indemnitee who fails to notify an indemnitor about an impending settlement proceeds at his own risk. In order to recover reimbursement, he must establish that there was liability, without a good defense, and that the amount of the settlement was reasonable (*Feuer v Menkes Feuer*, 8 AD2d 294). True, the Budens continued to litigate plaintiff's foreclosure action on their own for another two years, but they were ultimately unsuccessful. As to the reasonableness of the settlement, WSA's potential liability to plaintiff exceeded $4 million. BOG thus met the test for summary judgment on either of the first two cross claims, in the amount of $550,000. Concur—Rosenberger, J. P., Wallach, Rubin, Kupferman and Mazzarelli, JJ.