■ JENNIFER WOLFE et al., Appellants, v ST. CLARE'S HOSPITAL OF SCHENECTADY, Doing Business as ST. CLARE'S HOSPITAL, et al., Respondents. [869 NYS2d 644]—

Carpinello, J.

Upon cutting the palm of her right hand on broken glass,

July 27, 2007, we will exercise our discretion to treat the notice of appeal as valid pursuant to CPLR 5520 (c).

plaintiff Jennifer Wolfe (hereinafter plaintiff) sought treatment in the emergency department of defendant St. Clare's Hospital and was treated by emergency room physician defendant Michael J. Reilly. A five-centimeter laceration was noted and repaired. No tendon damage was detected. Following complaints of pain, an inability to flex her thumb and occupational therapy, she saw a hand surgeon approximately four months later. Exploratory surgery revealed that she had completely severed a tendon. The passage of time prevented its surgical repair.

This medical malpractice action ensued. The matter proceeded to a jury trial and two theories of negligence were asserted against Reilly, namely, that he failed to perform a proper physical examination on plaintiff and that he failed to refer her to a hand surgeon. At the close of proof, plaintiffs unsuccessfully moved for a directed verdict on the issue of liability pursuant to CPLR 4401. The jury thereafter returned a verdict in favor of defendants. Plaintiffs' posttrial motion for a directed verdict, a judgment notwithstanding the verdict and, alternatively, to set the verdict aside as against the weight of the evidence was denied. This appeal ensued.

At trial, plaintiffs presented expert proof that Reilly deviated from accepted medical standards in both his physical examination of plaintiff and his failure to refer her to a hand surgeon. This proof was based in large degree on two disputed factual issues, namely, the precise location of the initial laceration and plaintiff's ability—or lack thereof—to flex her thumb while in the emergency room. As to the location of the laceration, plaintiffs attempted to establish that it extended above the joint such that it would have been in Reilly's field of vision upon physical exploration and examination. With respect to the mobility of the thumb, plaintiff testified that Reilly never asked her to bend it and never performed any tests "of any kind" on it before suturing it. While she acknowledged that a resistance test was performed, she claimed that it was not done until after her thumb was sutured and further claimed that she was unable to perform the test, that is, she was unable push it as requested.

Defendants countered such evidence with their own factual and expert proof. Reilly testified that he tested the tendon by testing the strength of the injured thumb against resistance and documented that it had good strength. Moreover, according to Reilly and confirmed by a nurse's notation on her medical chart, plaintiff was able to move her thumb while in the emergency department. Reilly further testified that he cleaned the wound and then described his customary practice in determining

whether a tendon injury had occurred, that is, to retract both sides of the wound and ask that the digit be moved. With respect to plaintiff, no evidence of a tendon wound was noted by Reilly. Because of same, according to Reilly, he found no need to refer her to a specialist but instead determined that follow-up with her primary care physician was sufficient.

While plaintiff did in fact have a tendon injury, the jury heard evidence that an emergency room physician could perform an adequate physical examination on a patient and still miss a tendon laceration depending on its size and/or precise location. In other words, according to defendants' proof, a partial tendon injury can be out of the limited field of exploration of the examiner and thus undetectable. Indeed, as to plaintiff's injury, defendants submitted proof establishing that the laceration was on the palm of her hand near the base of the thumb below the joint, but the injury to the tendon was above the joint such that it would have been outside Reilly's field of vision upon exploration. In addition, according to Reilly, a partial tendon injury can later rupture causing loss of movement of the involved digit. To this end, medical records from plaintiff's treating hand surgeon document a *progressive* inability to flex her thumb over a four-to-six-week period. Indeed, a board-certified emergency medicine physician testified that neither Reilly's physical examination of plaintiff nor his failure to refer her to a hand surgeon deviated from accepted standards of care.

As there was sufficient conflicting factual and expert proof presented at trial, plaintiffs' motions for a directed verdict and a judgment notwithstanding the verdict were each properly denied (*see* CPLR 4401, 4404 [a]). In short, according defendants every favorable inference from the evidence, there was indeed a rational process by which the jury could find in their favor such that plaintiffs' motion for a directed verdict was properly denied (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). In addition, we find the evidence sufficient to establish a valid line of reasoning and rational process by which this jury could have determined that Reilly was not negligent under either theory asserted such that plaintiffs' request for a judgment notwithstanding the verdict was also properly denied (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Finally, with respect to plaintiffs' challenge to the verdict as being against the weight of the evidence, we are unable to conclude that the evidence preponderated so greatly in their favor that the jury could not have reached its conclusion on any fair interpretation of it (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). Accordingly, this aspect of their motion was likewise properly denied.

Cardona, P.J., Peters, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed, with costs.