[900 NYS2d 246]

DEUTSCHE BANK TRUST COMPANY OF AMERICAS, Appellant, v TRI-LINKS INVESTMENT TRUST et al., Respondents.

First Department, April 13, 2010

## APPEARANCES OF COUNSEL

*O'Hare Parnagian LLP*, New York City (*Robert A. O'Hare, Jr.* and *Michael G. Zarocostas* of counsel), for appellant.

*Constantine Cannon, LLP*, New York City (*Amianna Stovall* of counsel), for respondents.

## OPINION OF THE COURT

FRIEDMAN, J.P.

The main issue on this appeal is whether defendant Tri-Links Investment Trust (Tri-Links),[1] against which plaintiff Bankers Trust Company (Bankers Trust)[2] asserts a contractual right to indemnification for the costs of defending and settling a prior lawsuit, was afforded sufficient notice of the lawsuit to enable Bankers Trust to recover indemnity without having to prove that it would have been held liable had the lawsuit been tried to judgment. On this record, we hold that Tri-Links' notice of the lawsuit brought against Bankers Trust by Western Mining & Investments, LLC (WMI) afforded Tri-Links ample opportunity to protect its interests in that proceeding, in which it could have intervened at any time. In particular, the evidence shows that Tri-Links had a copy of the complaint in the WMI action no later than May 2002, four months after the suit was commenced; that Bankers Trust directly notified Tri-Links of the action orally in March 2003, and then in writing in May 2003; that Tri-Links responded to a subpoena in the action in 2003; and that Bankers Trust, by letter dated February 3, 2004, invited Tri-Links to discuss the matter in light of the latter's contractual indemnity obligation and the plaintiff's progressively decreasing settlement demands. The case was finally settled in March 2004, only after Tri-Links, in response to a February 26 letter advising that a settlement was contemplated, denied having any indemnity obligation at all with respect to the matter.

---

1. Tri-Links has been merged into defendant Nomura Special Situations Investment Trust (Nomura). In this opinion, the term "Tri-Links" is used to refer to both Tri-Links and Nomura.

2. As reflected in the caption, Bankers Trust is now known as Deutsche Bank Trust Company of Americas. This opinion refers to plaintiff as Bankers Trust, whether the time under discussion is before or after the name change.

Given the notice established by the foregoing facts, Bankers Trust need not prove its own liability to WMI to prevail on its claim for contractual indemnity. Moreover, the record fully establishes that Bankers Trust was sued in the WMI action for conduct in its capacity as agent of a group of lenders, which triggers the applicability of the relevant indemnity agreement. Hence, the record establishes, as a matter of law, that Bankers Trust is entitled to contractual indemnity for its settlement of the WMI action, as well as for the expenses it reasonably incurred in defending the suit. Accordingly, we reverse the order appealed from, deny Tri-Links' motion for summary judgment, and grant Bankers Trust's motion for summary judgment as to liability on its cause of action for contractual indemnity.

The pertinent factual background is more fully set forth in this Court's decision on the prior appeal in this case (43 AD3d 56, 57-60 [2007]). To summarize briefly, Bankers Trust was the agent for a group of lenders to Centennial Resources, Inc. (Centennial), a company in the midst of bankruptcy proceedings, pursuant to a Debtor-in-Possession Credit and Guaranty Agreement, dated October 14, 1998 (the DIP Agreement). Under section 11.06 of the DIP Agreement, the DIP lending group is obligated to indemnify Bankers Trust against any damage or liability it might incur by reason of actions taken in its capacity as agent for the group. Section 11.06 provides in pertinent part:

> "11.06. Indemnification. To the extent the Agent [Bankers Trust] is not reimbursed and indemnified by the Borrower [Centennial], the Lenders will reimburse and indemnify the Agent . . . for and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, costs, expenses or disbursements of whatsoever kind or nature which may be imposed on, asserted against or incurred by the Agent in performing its respective duties hereunder or under any other Loan Document or the Orders [of the bankruptcy court], in any way relating or arising out of this Agreement or any other Loan Document or the Orders provided that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the gross negligence or willful misconduct of the Agent."

In May 1999, the New York City law firm Richards Spears Kibbe & Orbe filed a notice of appearance in the Centennial

bankruptcy case on behalf of Tri-Links, which had begun acquiring interests in the DIP lending group.

During the course of the Centennial bankruptcy, WMI negotiated an agreement to purchase Centennial's assets with Bankers Trust, among others. Before the hearing on the motion to obtain the bankruptcy court's approval of the sale, however, Tri-Links had acquired a majority in interest of the DIP lending group. Tri-Links opposed the WMI deal, and instructed Bankers Trust, as contractual agent for the DIP lending group, to object to the transaction at the May 1999 hearing. Bankers Trust (which, in its individual capacity, supported the WMI deal) followed these instructions, as it was obligated to do, and the motion for approval of the asset sale was withdrawn.

In January 2002, WMI commenced an action in federal court against Bankers Trust, in which it asserted a number of contractual and tort theories for imposing liability on Bankers Trust based on the failure of WMI's effort to purchase Centennial's assets. So far as can be discerned from the record, Tri-Links first received notice of the WMI action in May 2002, when Bankers Trust filed with the court presiding over the Centennial bankruptcy case an open letter, dated May 1, 2002, announcing the commencement of the WMI action against it.[3] Tri-Links, which by May 2002 had become Centennial's largest creditor, had filed an appearance in the Centennial bankruptcy case (as previously noted), and thus, through its counsel in that proceeding, had notice of Bankers Trust's May 2002 letter to the bankruptcy court.

Also in May 2002, counsel for the Centennial liquidating agent—an attorney whom Tri-Links, as Centennial's largest creditor, had selected—sent Tri-Links (1) Bankers Trust's aforementioned letter to the bankruptcy court, (2) the WMI complaint, and (3) a memorandum, dated May 16, 2002, discussing, among other matters, the WMI action and Bankers Trust's

---

**3.** Bankers Trust's May 2002 letter to the bankruptcy court states, among other things:

> "Recently, an action was initiated against . . . Bankers Trust [i.e., the WMI action] . . . . Bankers Trust was one of the DIP Lenders in the above-referenced bankruptcy cases [i.e., the Centennial bankruptcy], which cases remain pending before Your Honor. [WMI] . . . appeared before Your Honor in an unsuccessful effort to acquire the debtors [*sic*] assets. In the [WMI action], WMI now sues Bankers Trust in connection with its having submitted, as agent, objections in the [bankruptcy case] to the proposed asset sale to . . . WMI."

reservation of its contractual indemnity rights with respect thereto. Thereafter, in July 2002, apparently following up on his May 2002 memorandum, the same attorney sent Tri-Links an additional memorandum concerning the WMI action, in which he advised Tri-Links to "lay [sic] low and let [Bankers Trust] make the next move, which may never happen."

Although, as discussed above, Tri-Links had been aware of the WMI action since May 2002 at the latest, direct contact between representatives of Bankers Trust and Tri-Links concerning the WMI action began in March 2003, the month issue was joined in that lawsuit, after Bankers Trust's motion to dismiss was denied.[4] Bankers Trust's outside counsel (Scott Musoff, Esq., of Skadden, Arps, Slate, Meagher & Flom LLP) recounted in his affirmation that he spoke with Tri-Links' in-house counsel on or about March 27, 2003, at which time the two attorneys "discussed the WMI Action against Bankers Trust, the need to get information from Tri-Links and the likelihood that someone from Tri-Links would be deposed." Subsequently, under cover of a letter dated May 8, 2003, an attorney at the Skadden firm, on Bankers Trust's behalf, sent Tri-Links' in-house counsel, among other documents, the complaint in the WMI action (which, again, had already been in Tri-Links' possession for at least a year) and the DIP Agreement (which contains the indemnity provision sought to be enforced in this action). In a conversation with Tri-Links' outside counsel that occurred around this time, Musoff took the position (as he later testified) that Bankers Trust and Tri-Links "were all in this together" with regard to the WMI action. In response, Tri-Links' counsel declared that her client, fearing the "litigious" nature of WMI's principal, did not want to be a named party in the WMI action.

In June 2003, WMI served Tri-Links with a subpoena demanding the production of documents in the WMI action. In response to the subpoena, Tri-Links' counsel, after consulting

---

4. The WMI action was originally filed in Kentucky federal court in January 2002. In lieu of answering, Bankers Trust moved to dismiss for failure to state a claim, arguing that it was improperly being sued for actions it had taken as an agent for a disclosed principal. During the pendency of the motion to dismiss, the action was transferred to Delaware federal court. In March 2003, the Delaware federal court denied the motion to dismiss on the ground that it could not then resolve a choice of law issue it deemed necessary to the resolution of the motion. We note that Bankers Trust claims that it sent formal notice of the action to Tri-Links (and other members of the DIP lending group) by letter dated March 11, 2003. Tri-Links, however, denies receiving the March 11 letter, and Bankers Trust does not rely on the letter on this appeal.

with Bankers Trust's counsel, asserted a joint attorney-client privilege between Tri-Links and Bankers Trust arising from the latter's status as agent of the Centennial DIP lending group, of which Tri-Links constituted the majority in interest. On this basis, Tri-Links declined to produce certain documents requested by WMI's subpoena, as stated in an October 2003 letter from Tri-Links' counsel to WMI's counsel. In addition, Tri-Links' counsel represented a former Tri-Links employee who was deposed in the WMI action.

Thus, Tri-Links had been well aware of the WMI action for nearly two years—and actively involved in the litigation of that suit for nearly a year—when, by letter dated February 3, 2004, Bankers Trust's counsel reminded Tri-Links of its indemnity obligation to Bankers Trust under the DIP Agreement and advised it that the court presiding over the WMI action, having refused to entertain summary judgment motions, had scheduled the case to go to trial before a jury on March 15, 2004. He further advised Tri-Links that "WMI has made several settlement demands, which it has revised downward over time," and concluded with the statement that "we want to discuss this matter . . . in light of your [indemnity] obligations to Bankers Trust under Section 11.06 of the Centennial DIP Agreement." It is undisputed that Tri-Links did not respond to this letter.

By letter dated February 26, 2004, Bankers Trust advised Tri-Links that it was contemplating a settlement of the WMI action, involving a contemplated payment of $2.7 million to WMI (which, in its complaint, alleged damages of $225 million). Bankers Trust's letter asked Tri-Links to contact the sender "immediately" to discuss the matter. By letter dated March 2, 2004, Tri-Links' counsel responded, taking the position that the WMI action "d[id] not involve" Tri-Links and denying that Tri-Links owed any indemnity obligations to Bankers Trust with respect to the WMI action. The next day, Bankers Trust and WMI executed a settlement agreement; a stipulation dismissing the WMI action was filed on March 4, 2004.[5] At no point did Tri-Links appear in court to object to the settlement.

In the present action, Bankers Trust seeks to recover substantially all of the sums it expended in defending and set-

---

**5.** The settlement agreement incorporated a general release of all members of the DIP lending group, including Tri-Links and its affiliates. Tri-Links' counsel had provided Bankers Trust's counsel with the proper corporate names by which to identify Tri-Links and its affiliates as beneficiaries of the release.

tling the WMI action (allegedly amounting to $6.35 million) from Tri-Links pursuant to the indemnity provision of the DIP Agreement.[6] After discovery, Tri-Links moved for summary judgment on the grounds that Bankers Trust was sued by WMI for actions that Bankers Trust took in its individual capacity (rather than in its capacity as agent of the DIP lending group), that Bankers Trust failed both to provide Tri-Links with adequate "notice" of the WMI action and to "tender" the defense of the action, and that the settlement amount was "unreasonable." Bankers Trust moved for summary judgment in its favor, arguing that it had proven all the facts necessary to establish its right to contractual indemnity.

Supreme Court granted Tri-Links' motion and dismissed the complaint, relying on two independent grounds. First, the court found that Bankers Trust had been sued in its individual capacity, not in its capacity as agent for the DIP lending group, and, therefore, no right of indemnity arose in connection with the WMI action. Second, the court held that Bankers Trust was required to prove that it could have been held liable to WMI, since it gave Tri-Links insufficient notice of the WMI action, and had failed to prove such potential liability. We now reverse.

We turn first to the issue of whether WMI sued Bankers Trust in the latter's capacity as agent for the DIP lending group. Stated otherwise, the question presented is whether the claims asserted against Bankers Trust in the WMI action fall within the scope of the indemnity provision of the DIP Agreement. To reiterate, that provision, section 11.06, obligates the members of the DIP lending group to indemnify Bankers Trust

> "for and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, costs, expenses or disbursements of whatsoever kind or nature which may be imposed on, asserted against or incurred by [Bankers Trust] *in performing its . . . duties hereunder . . . , in any way relating or arising out of this Agreement*" (emphasis added).

---

**6.** Bankers Trust's first amended complaint alleges that Tri-Links has a 99.16% share of the indemnity obligation under the DIP Agreement, corresponding to the percentage in interest of the DIP lending group it ultimately acquired. We note that Bankers Trust's complaint asserts, in addition to the cause of action for contractual indemnification, a cause of action for common-law indemnification. On this appeal, however, Bankers Trust does not appear to argue that it is entitled to summary judgment on the common-law claim.

Whatever self-serving characterization WMI placed on its claims against Bankers Trust, those claims unquestionably fell within the plain meaning of section 11.06. WMI's lawsuit against Bankers Trust was based on the latter's filing of an objection to WMI's proposal to purchase Centennial's assets, an action that WMI claimed was wrongful as to it. Bankers Trust objected to the WMI deal in its role as contractual agent of the DIP lending group, as the written objection states on its face. Moreover, Bankers Trust filed the objection precisely because it was directed to do so by Tri-Links, which had acquired a majority in interest of the group. In fact, the objection filed by Bankers Trust did not reflect its own preference; in its capacity as an individual member of the lending group, Bankers Trust had supported the WMI deal. Thus, the WMI action plainly arose, in essential part, from Bankers Trust's "performing its . . . duties [under the DIP Agreement] . . . , in any way relating or arising out of [the DIP Agreement] [sic]," and thus fell within the scope of the DIP Agreement's indemnification provision.[7]

This brings us to the issue of whether Tri-Links had sufficient notice of the WMI action to permit Bankers Trust to recover indemnity for the settlement upon a showing of its reasonableness, without having to establish that WMI would have prevailed had the suit been tried to judgment. While section 11.06 of the DIP Agreement says nothing about notice, it is well established under New York law that, where an indemnitor does not receive notice of an action settled by the indemnitee, "in order to recover reimbursement [for the settlement], [the indemnitee] must establish that [it] would have been liable and that there was no good defense to the liability" (Feuer v Menkes Feuer, Inc., 8 AD2d 294, 299 [1959]). Where the indemnitor does receive notice of the claim against the indemnitee, however, "the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make" (Coleman v J.R.'s Tavern, 212 AD2d 568, 568 [1995]; see e.g. Slepian v Motelson, 66 AD3d 871, 872 [2009];

---

7. Tri-Links' argument that the WMI action falls within section 11.06's exclusion for losses "resulting from the gross negligence or willful misconduct of [Bankers Trust]" is without merit. The record contains no evidence of "gross negligence or willful misconduct" by Bankers Trust. While the complaint in the WMI action included a claim that Bankers Trust committed "promissory fraud" and other torts, such "unsubstantiated allegations of fraud and misconduct are insufficient to bar indemnification pursuant to" the DIP Agreement (Meyerson v Tullman, 281 AD2d 170, 171 [2001]).

*CIGNA Corp. v Lincoln Natl. Corp.*, 6 AD3d 298, 299 [2004]; *Fidelity Natl. Tit. Ins. Co. of N.Y. v First N.Y. Tit. & Abstract*, 269 AD2d 560, 561 [2000]; *Goldmark Indus. v Tessoriere*, 256 AD2d 306, 307 [1998]; *Shihab v Bank of N.Y.*, 211 AD2d 430, 431 [1995]; *Horn Constr. Co. v MT Sec. Serv. Corp.*, 97 AD2d 786 [1983]; *Gray Mfg. Co. v Pathe Indus.*, 33 AD2d 739 [1969], *affd* 26 NY2d 1045 [1970]).

On this record, it is abundantly clear that Tri-Links had more than ample notice of the WMI action and was therefore able to take whatever steps it deemed necessary to protect its interests in that matter. To recapitulate, it is undisputed that Tri-Links received notice of the WMI action and of the settlement therein as follows:

- Tri-Links had notice of the WMI action, and received a copy of the complaint therein, no later than May 2002.

- Counsel to Centennial's liquidating agent—an attorney selected by Tri-Links—sent Tri-Links memoranda in May and July of 2002 discussing the WMI action and specifically noting that Bankers Trust had reserved its indemnification rights with respect thereto.

- Bankers Trust and Tri-Links, through their respective counsel, had discussions concerning the WMI action beginning in March 2003, the month that Bankers Trust's motion to dismiss was denied and issue was joined.

- Bankers Trust's adversary in the WMI action served a subpoena upon Tri-Links in June 2003, in response to which Tri-Links produced certain documents and, as to certain other responsive documents in its possession, asserted an attorney-client privilege held jointly with Bankers Trust, after consulting with Bankers Trust's counsel.

- Thus, by the time Bankers Trust notified Tri-Links of the contemplated settlement of the WMI action in February 2004, Tri-Links had been aware of the action, and in possession of a copy of the complaint therein, for nearly two years, and had been in contact with Bankers Trust's counsel concerning the action for nearly one year.

- By letter dated February 3, 2004, Bankers Trust told Tri-Links that "we want to discuss this matter [the WMI action] with you in light of your obligations to Bankers Trust under Section 11.06 of the Centennial DIP Agreement," and specifically referring to WMI's settlement demands, "which it has revised downward over time," and to the scheduled trial date of March 15, 2004.

- By letter dated February 26, 2004, Bankers Trust advised Tri-Links that Bankers Trust was "contemplating entering into a settlement" of the WMI action that would involve paying WMI less than 2% of the amount of damages it claimed. After Tri-Links responded by disclaiming any indemnity obligation to Bankers Trust relating to the WMI action, the settlement was finalized.

We hold that the notice established by the foregoing undisputed facts bound Tri-Links to any reasonable and good faith settlement of the WMI action. As to the timeliness of the notice, given that the DIP Agreement sets forth no particular requirements, Tri-Links' undisputed awareness of the WMI action and possession of the complaint no later than May 2002, and its contact with Bankers Trust's counsel concerning the matter from March 2003 (when issue was joined) until the case settled nearly a year later, was sufficient. While it was not until February 2004 that Bankers Trust clearly articulated its intent to seek indemnification, "[n]o particular form of notice and no formal notice is necessary" to bind an indemnitor (*Prescott v Le Conte*, 83 App Div 482, 487 [1903], *affd* 178 NY 585 [1904]; *see also* 23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 107), and a sophisticated business entity such as Tri-Links cannot claim to have been unaware of the significance of the WMI action to its own interests.

The result is not changed by the fact that Bankers Trust did not specifically tender the defense of the suit to Tri-Links. Tri-Links, having accumulated substantially all of the loans governed by the DIP Agreement (and thus substantially all of the indemnity obligation under the DIP Agreement) by the time the WMI action was commenced, could have offered to take over Bankers Trust's defense at any time. Indeed, Tri-Links does not deny that, given its potential indemnity obligation, it could have intervened in the WMI action at its own instance. Rather than offer to take over Bankers Trust's defense or intervene, Tri-

Links made a deliberate choice to stay on the sidelines and to allow Bankers Trust to defend the suit on its own. While there was nothing wrong with Tri-Links' decision to remain a spectator to the litigation, it cannot now avoid its obligation to indemnify Bankers Trust for settling the matter reasonably and in good faith (see *Oceanic Steam Nav. Co. [Ltd.] v Campania Transatlantica Espanola*, 144 NY 663, 665 [1895] ["It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim and that the action is pending with full opportunity to defend or to participate in the defense" (O'Brien, J.)]; *Prescott v Le Conte*, 83 App Div at 487 [indemnitors were bound by judgment against indemnitee, notwithstanding that "they were not notified to come in and defend the action," because indemnitors "had notice of the commencement of the action and an opportunity to defend the same, and under all the authorities this is sufficient, *so far as notice is concerned*, without any express notice to defend, to make the judgment binding upon them"]).

We see no issue as to whether Tri-Links received sufficient notice of the settlement negotiations between Bankers Trust and WMI, given that Bankers Trust's letter of February 3, 2004 requested that Tri-Links discuss the WMI action in light of Tri-Links' indemnity obligations, the imminent trial date, and WMI's progressively decreasing settlement demands. This letter was sent a month before the settlement was executed on March 3, 2004.[8] Thus, Bankers Trust did "notify [its] indemnitor about [the] impending settlement" (*Chase Manhattan Bank v 264 Water St. Assoc.*, 222 AD2d 229, 231 [1995]). In any event, what bound Tri-Links to any reasonable settlement Bankers Trust might conclude with WMI was not specific notice of the settlement negotiations, but notice of the action itself, which Tri-Links had had for many months before the February 3, 2004 letter. Again, Tri-Links had known of the action since May 2002 and had been in contact with Bankers Trust concerning the ac-

---

**8.** The dissent states that "Bankers Trust . . . notified the court [presiding over the WMI action], on February 22, 2004, that the matter had been settled." The February 22 letter to which the dissent refers (which was sent by WMI's counsel, not Bankers Trust's), while it does state that the parties had "today . . . settled this matter," also states: "We anticipate immediately drafting final settlement documents and promptly submitting a stipulation of dismissal with prejudice to the Court." Thus, the settlement was neither final nor binding as of February 22, 2004. The February 22 letter states that it was being sent to the court on that date (a Sunday) because the parties were requesting the cancellation of the pretrial conference scheduled for the next day.

tion since March 2003, the month issue was joined. Having had such notice of the WMI action, and having nonetheless failed to offer to take up Bankers Trust's defense, Tri-Links is bound by Bankers Trust's settlement with WMI "to the extent that it was reasonable and entered into in good faith" (*CIGNA*, 6 AD3d at 299).

Although the point is not legally dispositive, we also note that there is some incongruity between Tri-Links' efforts to avoid its indemnity obligation based on the asserted insufficiency of the notice it had of the WMI action and, on the other hand, its denial that it had any such obligation when informed that Bankers Trust was on the verge of settling the case essentially for nuisance value. On this record, it appears that, whenever Bankers Trust invoked its indemnity rights under the DIP Agreement, and however explicitly it did so, Tri-Links would have responded by rejecting out of hand the suggestion that it had any obligation to indemnify Bankers Trust in connection with the WMI action.

As to the reasonableness of the settlement, there does not appear to be any issue. The case was settled for less than 2% of the $225 million in damages alleged in WMI's complaint, and the settlement amount (evidently, $2.7 million) was not much more than the range of the estimated legal fees and expenses of a jury trial ($1.75 million to $2.25 million). While Bankers Trust vigorously denied having any liability to WMI throughout the litigation, the case was settled after the court had declared that it would not entertain summary judgment motions and had set an imminent date for a jury trial. Under these circumstances, it cannot be said, notwithstanding the apparent weakness of WMI's claims, that there was no possibility that litigating the case to the end would result in a judgment against Bankers Trust in an amount greater than the settlement (*see Pahl v Grenier*, 279 AD2d 882, 884 [2001] [no issue as to reasonableness of settlement, although a defense was available at trial]; *Clarostat Mfg. Co. v Travelers Indem. Co.*, 115 AD2d 386, 388-389 [1985] [no issue as to reasonableness of settlement before retrial]; *Waltz v MRC Mgt., LLC*, 378 F Supp 2d 440, 442-443 [SD NY 2005] [no issue as to reasonableness of settlement before trial, although defense verdict was possible]; *see also Fidelity Natl. Tit. Ins.*, 269 AD2d at 562 [granting summary judgment for indemnification of settlement where indemnitee showed that it "could have been held liable if it had proceeded to trial"]; *Goldmark Indus.*, 256 AD2d at 307 [same]; *Coleman*,

212 AD2d at 569 [same]). In light of the unpredictability of juries and the amount of damages WMI was claiming, Tri-Links cannot identify anything in the record that would place in question either the reasonableness or the good faith of the settlement. Thus, even if Tri-Links had not been given an opportunity to participate in the settlement negotiations (which it was), there would not be any grounds for denying Bankers Trust the indemnity for which it bargained. An indemnitor with notice "cannot object to a settlement merely because it believed it could have driven a tougher bargain, or been a tougher litigator" (*Conopco, Inc. v Imperial Chem. Indus. PLC*, 1999 WL 1021077, *5, 1999 US Dist LEXIS 17465, *15 [SD NY 1999]).

We note that Bankers Trust seeks indemnification both for the cost of the settlement of the WMI action and for the cost of litigating that action prior to settlement, i.e., the attorneys' fees and other litigation expenses that were incurred in defending the case. Even if there were an issue as to whether Bankers Trust failed to give sufficient notice of the WMI action for purposes of recovering indemnity for the settlement, or if there were an issue as to the reasonableness of the settlement, we would see no basis—and Tri-Links has articulated none—for denying Bankers Trust indemnification for the attorneys' fees and other litigation expenses it reasonably incurred in defending the WMI action. Accordingly, under any view of the case, Bankers Trust is entitled as a matter of law to recover such reasonable defense costs, which have yet to be precisely quantified.

In closing, we observe that, at bottom, what occurred in this case is that Bankers Trust, at the direction of Tri-Links, abandoned its own position on the WMI deal and instead asserted Tri-Links' position. As a result, Bankers Trust was sued by WMI. Tri-Links was bound by an agreement to indemnify Bankers Trust for the cost of that suit, which arose from Bankers Trust's adoption of Tri-Links' position. We see no reason why Tri-Links should not make good on its promise.

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), which granted defendants' motion for summary judgment dismissing the complaint, and denied plaintiff's motion for summary judgment, should be reversed, on the law, with costs, defendants' motion denied, and plaintiff's motion granted.

SWEENY, J. (dissenting). Since I believe that there is an issue of fact whether defendants were properly placed on notice that

plaintiff would be invoking its contractual right of indemnification, I dissent.

As part of a bankruptcy proceeding commenced by entities referred to as Centennial Resources, Inc. (Centennial), the predecessor companies of plaintiff (Bankers Trust) and defendant Tri-Links Investment Trust provided a $15 million debtor-in-possession (DIP) loan to Centennial. This loan was memorialized in a Debtor-in-Possession Credit and Guaranty Agreement (DIP Agreement) executed by Centennial as borrower and, inter alia, Tri-Links' predecessors as lenders. Bankers Trust participated in the agreement both as a lender and as agent for the lenders.

The agreement contained a broad indemnity agreement in favor of Bankers Trust as agent, in which the lenders agreed to indemnify Bankers Trust for "any and all liabilities" it incurred in performing its duties "in any way relating or arising" from the DIP Agreement, excluding gross negligence and willful misconduct.

Defendants initially were minority members of the DIP lending group by reason of the small portion of the loan they funded. Centennial, as part of the bankruptcy proceedings, was negotiating a sale of its assets to a third party, Western Mining and Investments, LLC (WMI). These negotiations resulted in an Asset Purchase Agreement between Centennial and WMI. The majority of the DIP lenders favored the proposed sale; defendants did not. The proposed sale was subject to the approval of the bankruptcy court.

The DIP lenders directed Bankers Trust as agent to inform WMI of the majority position and defendants' minority opposition. Defendants thereafter purchased the majority of the claims of the DIP lending group. As the new majority, defendants directed Bankers Trust to object to the sale of Centennial's assets to WMI at the bankruptcy hearing, which objection Bankers Trust duly filed. Bankers Trust then sold its individual interests in the DIP loan to defendants. The bankruptcy court did not approve the sale to WMI.

In January 2002, WMI commenced an action against Bankers Trust in the U.S. District Court for the Western District of Kentucky over the failed sale of Centennial's assets, claiming it suffered $225 million in damages. The complaint alleged that Bankers Trust made an enforceable oral promise to WMI that the majority of the DIP lenders would approve the sale of Centennial's assets, and that this alleged promise was breached by

Bankers Trust's filing (at defendants' direction) of the lending group's objection to the sale. After Bankers Trust argued that WMI's claims were without merit because it had at all times acted as the agent of a disclosed principal, WMI amended its complaint to add a claim for breach of an alleged "implied warranty of authority" to cause the DIP lending group to approve the transaction.

Bankers Trust retained counsel to defend it in the action but did not formally notify defendants that it had been sued or that it had retained counsel. Defendants allege that Bankers Trust never tendered defense of the WMI action to them or notified them that it intended to seek indemnification.

However, in May 2002, counsel for the Centennial bankruptcy estate sent defendants' New York counsel a copy of the complaint in the WMI action and advised defendants that Bankers Trust had reserved its indemnification rights against the estate. In May 2003, Bankers Trust's counsel in the WMI action sent defendants another copy of the WMI complaint and certain other documents relevant to the litigation. From mid-2003 to early 2004, defendants participated in the WMI action as a third party, providing witnesses and documents and actively assisting Bankers Trust in the defense of the action. In fact, at one point during the litigation, defendants refused to turn certain documents over to WMI based on an asserted joint-defense privilege with Bankers Trust.

Settlement talks began between Bankers Trust and WMI. As the trial date neared and the talks intensified, on February 3, 2004, Bankers Trust finally gave defendants formal notice of the WMI action and made a formal request for indemnification under the DIP Agreement. That same letter advised defendants that the matter was scheduled for trial on March 15, 2004, that Bankers Trust was aggressively preparing for trial, and that WMI had made several settlement offers "which it ha[d] revised downward over time." On February 22, WMI's counsel advised the court that the action was settled. Bankers Trust sent a follow-up letter to defendants on February 26 (four days after it notified the court that the matter had been settled), notifying them that it was "contemplating" a settlement with WMI for $2.7 million, and requested that defendants contact it "if you wish to discuss this matter." Defendants notified Bankers Trust on March 2 that they were taking the position that the WMI action did not involve them and that therefore they were under no indemnity obligation.

The WMI settlement agreement was signed by Bankers Trust and WMI on March 3, 2004 in the amount of $2.7 million. As part of the agreement, Bankers Trust obtained releases on behalf of the DIP lenders, including defendants. Bankers Trust argues that by accepting the benefit of the releases without objection, defendants approved the settlement. Defendants claim that they made it clear to Bankers Trust that they did not consent to the settlement or admit liability for WMI's claims or Bankers Trust's claim for indemnification.

On this appeal, defendants argue that the indemnification provision of the DIP Agreement was not triggered as a result of Bankers Trust's failure to timely notify them of the WMI action or to tender defendants the opportunity to defend the action.

We addressed the issue of notice and tender in *Feuer v Menkes Feuer, Inc.* (8 AD2d 294 [1959]). We held that "an indemnitee is not required to give notice of claims against him to the indemnitor" in the absence of a "specific provision in the contract of indemnity" (at 298). However, if the indemnitee fails to notify the indemnitor, "in order to recover reimbursement, he must establish that he would have been liable" and that the amount paid in settlement was a reasonable amount and entered into in good faith (at 299).

While it is true that Bankers Trust did not give defendants formal notice of the WMI action until February 3, 2004, the indemnification agreement does not require such formal notice.

It is well established that unless otherwise specified in the contract, no particular form of notice is required for an indemnitee's notice of claim to his indemnitor (*see Prescott v Le Conte*, 83 App Div 482, 487 [1903], *affd* 178 NY 585 [1904]; *see also Combustion Eng'g, Inc. v Imetal*, 235 F Supp 2d 265, 273 [2002]). Indeed, such notice need not even be in writing; it "may be implied from knowledge of the pendency of the action and participation in its defense" (23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 107).

However, where an indemnitee does not give notice, it must meet the *Feuer* requirements of demonstrating that it would have been liable in the underlying action and that the ultimate settlement entered into was reasonable and made in good faith.

The record shows that, in May 2003, Bankers Trust's counsel made defendants aware of the action when he sent defendants a second copy of the complaint. As the majority correctly points out, defendants were in fact aware of the litigation as early as

May 2002. However, notification of the litigation did not come from Bankers Trust until May 2003, and it was incumbent upon Bankers Trust to provide notice of the action. From at least May 2003, defendants took an active role in the litigation, closely aligning themselves with Bankers Trust's position in the litigation.

Defendants however, contend that, although they were made aware of the litigation, at no time before February 3, 2004 did Bankers Trust notify them that it intended to invoke the indemnification provisions of the DIP Agreement, nor did it tender the defense of the WMI action to them. They argue that any claimed notice preceding the letter of February 3 was not sufficient. Moreover, defendants point out that the February 3rd notice was given while Bankers Trust was already deeply involved in settlement negotiations that led to the February 22nd notification to the court that the matter had been settled.

The majority argues that since defendants had notice of the litigation, such notice, by whatever means obtained, is sufficient. However, the case law on this issue places the burden upon the indemnitee to notify the indemnitor of the litigation and that it seeks indemnification pursuant to the indemnification agreement between them. Here, there is a question whether Bankers Trust gave adequate notice of the impending settlement to defendants.

As the majority concedes, Bankers Trust first notified defendants of settlement negotiations by letter dated February 3, 2004. In that letter, for the first time, Bankers Trust invoked its indemnification rights. Although the letter stated that WMI had made several settlement offers, which were revised downward from time to time, and invited defendants to participate in the settlement discussions, defendants did not respond to the letter. What is missing from the letter is the fact that Bankers Trust was already deeply involved in settlement negotiations and was close to a settlement. Indeed, in a follow-up letter to defendants dated February 26, 2004, Bankers Trust advised that it was "contemplating" a settlement in the sum of $2.7 million. However, Bankers Trust had already notified the court, on February 22, 2004, that the matter had been settled.

By letter dated March 2, 2004, defendants took the position that the WMI action did not involve them and denied any indemnification obligation. This is quite a curious position coming from parties who were involved in this litigation and were aligned in interest with Bankers Trust. Be that as it may, two

days later, Bankers Trust and WMI filed a stipulation of settlement.

There is no question that "[a]n indemnitee who fails to notify an indemnitor about an impending settlement proceeds at his own risk. In order to recover reimbursement, he must establish that there was liability, without a good defense, and that the amount of the settlement was reasonable" (*Chase Manhattan Bank v 264 Water St. Assoc.*, 222 AD2d 229, 231 [1995], citing *Feuer v Menkes Feuer, Inc.*, 8 AD2d 294 [1959]).

Thus, there is a question whether Bankers Trust's notification to defendants of the settlement negotiations was sufficient to permit defendants to meaningfully participate therein. While Bankers Trust argues that defendants refused to participate in the settlement of the WMI action and are therefore estopped from challenging it, there is an issue as to when defendants were made aware of the proposed settlement or whether they were, in fact, presented with essentially a fait accompli, rather than a genuine opportunity to participate in the settlement negotiations. As a result, there is a question whether the notice of settlement negotiations given by Bankers Trust was timely made and in good faith. The determination of such issues, relying on questions of credibility, is not appropriately made on a summary judgment motion (*see Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004]).

On the question of Bankers Trust's liability in the WMI action, it made no claim in its papers that it would have been liable in the underlying action. Its argument in the motion court and on appeal relies on the defense that the agent of a disclosed principal cannot be held liable for its actions taken as an agent (*see News Am. Mktg., Inc. v Lepage Bakeries, Inc.*, 16 AD3d 146, 147 [2005]). Since the trial court in the WMI action determined that no motions for summary judgment would be entertained, Bankers Trust could not test its defense except at trial.

Defendants contend that the major portion of WMI's claimed damages consisted of future profits which would have been speculative at best and therefore would not result in a jury verdict against Bankers Trust. In turn, Bankers Trust argues that the settlement of less than 2% of claimed damages is reasonable.

While defendants present no evidence to contradict the reasonableness of this settlement, the question of course turns on whether Bankers Trust was liable in the WMI action. As noted, this is an issue that must be determined at trial.

Based upon the conflicting claims on the issue of notice of settlement, and the evidence submitted by the parties in support of their respective positions, it is clear that an issue of fact exists as to the sufficiency of the notice of settlement given to defendants. Therefore, both motions for summary judgment on this issue should have been denied and the matter should be remanded for trial on the above-discussed issues.

CATTERSON, RENWICK and FREEDMAN, JJ., concur with FRIEDMAN, J.P.; SWEENY, J., dissents in a separate opinion.

Order, Supreme Court, New York County, reversed, on the law, with costs, defendants' motion for summary judgment denied, and plaintiff's motion for summary judgment granted.