██ Thomas P. Caruso et al., Respondents, v Northeast Emergency Medical Associates, P.C., Appellant. [926 NYS2d 702]—

Garry, J. Appeals (1) from an order of the Supreme Court (Reilly, Jr., J.), entered February 1, 2010 in Schenectady County, which, among other things, partially granted plaintiffs' cross motion for a directed verdict, (2) from the judgment entered thereon, and (3) from an order of said court, entered April 29, 2010 in Schenectady County, which denied defendant's motion for reargument.

This indemnification case arises from a medical malpractice action that plaintiff Thomas P. Caruso (hereinafter plaintiff) and his wife, derivatively, commenced against Ellis Hospital and emergency room physician Alex Pasquariello as a result of medical care and treatment that plaintiff received on the evening of July 27, 2001. Plaintiff had seen his physician earlier in the day who, concerned by plaintiff's complaint of a persistent headache of varying intensity accompanied by vomiting, directed him to the hospital's emergency room for further evaluation. Plaintiff waited for approximately two hours at the hospital before being seen by Pasquariello, who diagnosed plaintiff with a headache (possibly caused by tension or a migraine), and discharged him.

The next day upon her return from work, plaintiff's wife found her husband vomiting and unable to walk. He was then taken by ambulance to a different hospital, and diagnosed with a cerebral hemorrhage. Following emergency surgeries and various complications arising therefrom, plaintiff suffered permanent brain injuries and the loss of his eyesight.

After commencing the medical malpractice action, plaintiffs learned that Pasquariello, an employee of defendant, rendered treatment to plaintiff pursuant to a contract between defendant and the hospital, whereby defendant would supply physicians to provide medical services in the hospital's emergency room. Plaintiffs settled with Pasquariello for $3 million, the full amount available from his insurance policy with Medical Liability Mutual Insurance Company (hereinafter MLMIC). The hospital settled plaintiffs' lawsuit against it[1] by paying $1 million in cash and assigning any indemnification rights it had against defendant for an amount up to $1 million. Plaintiffs also executed a general release.[2]

Thereafter plaintiffs, as assignees of the hospital, commenced this action against defendant seeking common-law indemnification in the amount of $1 million.[3] MLMIC, which was also defendant's insurance carrier, disclaimed coverage, arguing that plaintiffs waived all claims against defendant when they signed the general release settling the matter against the hospital. Supreme Court, among other things, granted defendant's motion for summary judgment dismissing the complaint and, on appeal, this Court reversed the grant of summary judgment, finding questions of fact as to the parties' intentions with respect to the release of the indemnification claim (*Caruso v Northeast Emergency Med. Assoc., P.C.*, 54 AD3d 524, 529-530 [2008]).

Following a trial, the jury rendered a verdict in defendant's favor on the issue of whether negligence on the part of the hospital's nursing staff was a proximate cause of plaintiff's injuries, thus defeating the claim for common-law indemnification. Supreme Court had reserved upon and thereafter granted

---

1. Prior to the settlement, plaintiffs' claims against the hospital other than those premised upon vicarious liability were dismissed by Supreme Court.

2. It was agreed as part of the settlement that the total sum of plaintiffs' losses was $5 million. The specific terms and conditions of the stipulation are set forth in the decision rendered upon the parties' prior interlocutory appeal to this Court (*Caruso v Northeast Emergency Med. Assoc., P.C.*, 54 AD3d 524, 526-529 [2008]).

3. Although the record reveals that there was some confusion as to whether contractual indemnification was also involved, it was clarified at trial that plaintiffs' claim sounded only in common-law indemnification.

plaintiffs' motion for a directed verdict, setting aside the jury's finding with respect to the proximate cause issue. Defendant's motion to set aside the verdict was denied, as was its later motion to reargue. Supreme Court then entered judgment for plaintiffs in the amount of $1 million, plus interest and disbursements. Defendant appeals from the order and judgment in plaintiffs' favor.[4]

Initially, defendant contends that Supreme Court erred in granting plaintiffs' motion for a directed verdict setting aside the jury's finding of proximate cause with respect to the alleged negligence of the hospital's staff. The verdict sheet asked the jury whether, among other things, the "[h]ospital and its nursing staff deviate[d] from an accepted standard of nursing care during their treatment" of plaintiff and, if so, whether "that deviation [was] a proximate cause of [plaintiff's] injuries." The jury answered "Yes" to both questions. Defendant seeks to have the jury's finding as to proximate cause reinstated. This would result in dismissal of the action because plaintiffs, as assignees of the hospital, would be barred from recovering on their indemnification claim if the hospital was found liable through active negligence for the underlying claim in any degree (see Cunha v City of New York, 12 NY3d 504, 509 [2009]).

Under CPLR 4401, a directed verdict is "appropriate when, viewing the evidence in a light most favorable to the nonmoving party and affording such party the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovant" (Hytko v Hennessey, 62 AD3d 1081, 1083 [2009]). "In a medical malpractice action, establishment of a prima facie case requires expert testimony that there was a deviation from accepted standards of medical care and that such deviation was the proximate cause of the injury" (id. at 1083-1084 [citations omitted]; see Turcsik v Guthrie Clinic, Ltd., 12 AD3d 883, 886 [2004]). Here, proof establishing the nursing staff's negligence was set forth via the testimony of two experts. Judith Quinn, an emergency department director certified in critical care, opined that the hospital's nurses were negligent in that, among other things, they improperly placed plaintiff in a waiting room set aside for minor injuries, failed to properly document plaintiff's condition and complaints, and did not convey to Pasquariello the fact that plaintiff had been referred to the emergency room by his physician. Barabra Salisbury, a nurse

---

4. Defendant also appealed from the denial of its motion for reargument, but, as no appeal lies from a denial of such a motion, defendant's appeal from that order must be dismissed (see Matter of Sital v Fischer, 76 AD3d 723, 724 n [2010]).

manager, testified that there was relevant documentation that was not included in plaintiff's triage note. Thus, the record amply supported the jury's finding that the hospital's nurses were negligent in their care of plaintiff.

However, we agree with Supreme Court that the proof was deficient with respect to whether the nursing staff's negligence was a proximate cause of plaintiff's injuries. Neither of the two physicians who testified for the parties stated that the nursing staff's alleged negligence was a cause of plaintiff's injuries. In fact, while defendant argues that the two hours that plaintiff spent in a waiting room before he was seen by Pasquariello must have been a factor, defendant's expert physician did not render such an opinion and plaintiffs' expert physician, Joseph Carfi, testified that plaintiff's "devastating injuries" were caused by the 24-hour delay that occurred *after* plaintiff was discharged from the hospital. While Quinn testified that, in her experience, most physicians would have ordered tests such as a CAT scan or an MRI if a patient had been sent to the emergency room by his or her physician, she also acknowledged that Pasquariello, in his May 2003 deposition, stated that his evaluation and diagnosis of plaintiff would not have changed even if he had been in possession of complete documentation, including the physician referral. Given the absence of expert testimony establishing proximate cause, we conclude that Supreme Court properly granted plaintiffs' motion for a directed verdict (*see Hytko v Hennessey*, 62 AD3d at 1084).

Next, we find defendant's challenge to Supreme Court's rulings regarding certain subpoenas to be unavailing. We are unpersuaded that the court abused its discretion by declining to quash a subpoena of the MLMIC claim file, as well as subpoenas served on three of MLMIC's employees, notwithstanding defendant's assertion that the information sought was prepared for litigation related to the underlying medical malpractice action against the hospital and Pasquariello, and, therefore, was not subject to disclosure. The party claiming that privilege bears the burden of "identifying the particular material with respect to which the privilege is asserted and establishing with specificity that the material was prepared exclusively in anticipation of litigation" (*Bombard v Amica Mut. Ins. Co.*, 11 AD3d 647, 648 [2004]; *see Claverack Coop. Ins. Co. v Nielsen*, 296 AD2d 789, 790 [2002]; *see also* CPLR 3101 [d] [2]). Here, defendant failed to identify any particular document that was privileged, and the affidavits of MLMIC employees only made conclusory statements that their work was prepared in anticipation of litigation. Accordingly, we find no basis to disturb Supreme Court's denial

of the motion to quash (*see Bombard v Amica Mut. Ins. Co.*, 11 AD3d at 648; *Claverack Coop. Ins. Co. v Nielsen*, 296 AD2d at 790).

As for defendant's contention that its subpoena seeking the testimony of plaintiffs' counsel to explain the circumstances surrounding the settlement was improperly quashed, we cannot agree that Supreme Court abused its discretion. Upon such a motion, it is not enough that the party issuing the subpoena establish that the disclosure sought is relevant; it must also be shown that the information sought cannot be obtained from another source (*see Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 80 AD3d 199, 203 [2010]). Defendant failed to meet that standard, and we find no basis for reversal (*see id.*).

Next, defendant contends that the jury's finding that plaintiffs did not intend to release defendant from the indemnity rights they obtained by assignment from the hospital was not supported by legally sufficient evidence and, therefore, its motion to set that finding aside should have been granted. Defendant argues that plaintiffs clearly meant to include the assigned indemnity claim when they executed the general release reciting, among other things, that defendant was released from any and all claims by plaintiffs (*see* 54 AD3d at 526). At trial, plaintiffs presented the release, the stipulation of settlement, and the testimony of an attorney who represented the hospital in the underlying medical malpractice action. This witness testified that, at the time of the settlement, it was his understanding that the hospital was assigning its indemnification claim against defendant to plaintiffs and there was no intention that this release would "waive or extinguish any rights to receive an assignment from Ellis Hospital of their rights of indemnification." This and other proof, when viewed in the light most favorable to plaintiffs, was legally sufficient to support the jury's finding that plaintiffs did not intend to release defendant from the indemnification claim (*see Cramer v Benedictine Hosp.*, 301 AD2d 924, 929 [2003]). Moreover, the jury's finding is not against the weight of the evidence (*see Wolfe v St. Clare's Hosp. of Schenectady*, 57 AD3d 1124, 1126 [2008]).[5]

Next, defendant argues that its motion to set aside the jury's finding that it had sufficient notice of the hospital's settlement

---

5. We are also unpersuaded that a verdict should have been directed in defendant's favor based upon certain remarks made by plaintiffs' counsel in his opening statement, that defendant labels an admission. The remarks could be interpreted in different ways and, even viewing them in defendant's favor, they are not so self-defeating as to be characterized as an admission warranting a directed verdict (*see De Vito v Katsch*, 157 AD2d 413, 416 [1990]).

should have been granted. Notably, where it is shown that an indemnitor "receive[d] notice of the claim against the indemnitee, . . . the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make" (*Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust*, 74 AD3d 32, 39 [2010] [internal quotation marks and citation omitted]). Here, the deposition testimony of two of defendant's owners, together with trial testimony from the hospital's counsel, provided proof that defendant had timely notice of plaintiff's injuries and the lawsuit commenced against Pasquariello and the hospital, as well as the hospital's settlement proposal to assign the hospital's indemnification claim to plaintiffs. Accordingly, the jury's finding that defendant had notice of the claim was supported by legally sufficient evidence, and was not against the weight of the evidence (*see generally Wolfe v St. Clare's Hosp. of Schenectady*, 57 AD3d at 1126).

As assignees of the hospital, plaintiffs bore the obligation to prove that the hospital's settlement of the case was done in good faith and for a reasonable amount (*see Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust*, 74 AD3d at 39). To that end, plaintiffs offered expert medical proof at trial establishing the extent of plaintiff's permanent brain injuries caused by the intraventricular hemorrhage, as well as his blindness. Proof by other experts described how plaintiff will require in-home medical care for the rest of his life. Estimates as to the approximate cost of that care were also provided. Moreover, the attorney who represented the hospital during settlement negotiations testified that, in his view, it was in the hospital's best interest to settle this case after considering the possible damages following a jury trial. We find that this constituted legally sufficient evidence to support the jury's conclusion that the hospital's settlement of this case was reasonable and done in good faith and, further, that the verdict was not against the weight of the evidence (*see Acunto v Conklin*, 285 AD2d 712, 713-714 [2001]; *see also Garrison v Lapine*, 72 AD3d 1441, 1443-1444 [2010]).[6]

Defendant's remaining contentions, including its challenge to the jury instructions and assertion that cumulative errors on the part of Supreme Court warrant a new trial, have been examined and found to be unpersuasive.

---

**6.** Defendant also challenges the jury's finding that Pasquariello deviated from an accepted standard of care and this was a proximate cause of plaintiff's injuries. It is unnecessary to consider this argument, as plaintiffs would only be required to prove the underlying liability of defendant's employee if it was determined that the hospital had not provided appropriate notice (*see Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust*, 74 AD3d at 39).

Peters, J.P., Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order entered February 1, 2010 and the judgment are affirmed, with costs. Ordered that the appeal from the April 29, 2010 order is dismissed.